**UNITED STATES of America**

**v.**

**Hugh Matthew GILMORE, Defendant.**

**No. 68–CR–21.**

United States District Court
E. D. New York.

Jan. 15, 1969.

Joseph P. Hoey, U. S. Atty. Eastern District of New York, for United States of America; Michael Rosen, Frank R. Natoli, Asst. U. S. Attys., of counsel.

Koozman & Hartman, New York City, for defendant; George H. Hartman, New York City, of counsel.

ZAVATT, Chief Judge.

This is a criminal prosecution under the Military Selective Service Act of 1967, 50 U.S.C. App. §§ 451–71 tried to the court without a jury pursuant to Rule 23(a) of the Federal Rules of Criminal Procedure. Defendant is charged with knowingly failing and neglecting to perform a duty required of him under

that Act, namely to report for civilian work at Kings Park State Hospital in lieu of induction, in violation of 50 U.S.C. App. §§ 456(j), 462(a). There is no dispute as to whether defendant did in fact knowingly fail and neglect to report to Kings Park State Hospital, and the court finds beyond a reasonable doubt that he did knowingly fail and neglect to so report. However, defendant raises several questions of law in support of his position that his failure to report was not in violation of the aforesaid statutes.

Defendant claims that

(1) he was denied due process of law in that he was not furnished a copy of the report of the Government Appeal Agent included in his Selective Service file and was not given an opportunity to reply thereto;

(2) he was denied due process and equal treatment under the Selective Service Regulations because his "processing" for civilian work was not commenced within ten days after he was found physically acceptable, as allegedly required by 32 C.F.R. § 1660.20(a);

(3) he was denied due process because the Local Board failed to give him timely notice of the meeting with a representative of the New York City Director's office pursuant to 32 C.F.R. § 1660.20 (c);

(4) the Local Board was without authority to issue an order because no determination was made that civilian work was available, as required by Local Board Memorandum No. 64;

(5) he was denied the right to be represented by counsel before the Local Board contrary to the Fifth and Sixth Amendments to the Constitution.

This is one of three similar cases tried to the court on the same day, in each of which the defendant was represented by the same counsel. The others are United States of America v. Mendoza, 295 F.Supp. 673 and United States of America v. Smith, 295 F.Supp. 691. A comprehensive opinion in *Mendoza* is being filed simultaneously herewith.

Defendant was duly registered with Selective Service Local Board No. 20, Bronx, N. Y. On January 26, 1965, the Local Board mailed to the defendant New York City Form No. 54, a questionnaire to be answered by a registrant who claims to be a conscientious objector and/or minister of religion. The defendant completed his answers thereto and returned the said Form to his Local Board on or about February 5, 1965. The Form 54 recited that he was affiliated with the Melrose Unit of Jehovah's Witnesses; that he was a "Publisher," an assistant "Account Servant" and an assistant "Book Study" conductor;[1] that he was a "Vacation Pioneer" for two weeks in August of 1964; that he distributed material published by the Watchtower Society;[2] that he engages in field ministry work and Bible studies; that for the past five months he had spent thirteen hours per month in field ministry work; that his ministerial duties over the past month included, *inter alia,* preparation for a public Bible sermon of one hour in length. The Form 54 also discussed his gainful employment as clerical employee, his study of the Bible and his conscientious objection to the use of force. Nonetheless he was classified I-A on February 18, 1965 and again on March 18, 1965 following a personal ap-

1. "In the structure of the church, the Congregation Servant presides and is in a position comparable to that of the minister in the more conventional denominations. Immediately below him are the Pioneer Ministers, who are required to devote a minimum of 100 hours a month to religious duties, and the Assistant Congregation Servant, who assumes leadership of the church in the absence of the Congregation Servant. Then come the Bible Study Servants, Magazine Territory Servants, Accounts Servants and various study and school Servants." United States v. Hull, 391 F.2d 257, 258 (4th Cir.), cert. denied, 392 U.S. 914, 88 S.Ct. 2076, 20 L.Ed.2d 1373 (1968).

2. The Watchtower Bible and Tract Society is the Governing Body of the Jehovah's Witnesses. Fitts v. United States, 334 F. 2d 416, 418 (5th Cir. 1964).

pearance before the Board. On March 22, 1965 the defendant notified the Local Board that he wished to appeal the I-A classification.

Before the Local Board forwarded the defendant's appeal to the Appeal Board, it directed the defendant to meet with the Government Appeal Agent. He did meet with the said Agent on April 15, 1965. On April 30, 1965, the Government Appeal Agent filed a four page statement regarding defendant's appeal without giving defendant a copy thereof. The defendant's file was then immediately sent to the Appeal Board.

The Associate Government Appeal Agent involved in this case testified that he took the appeal in behalf of the defendant and identified the four page statement as the "appeal." While unable to remember the specifics of his meeting with the defendant, he testified that, as a matter of general practice, when a registrant comes to see him concerning an appeal, he tells the registrant that such registrant may prepare the appeal or that he (the Agent) will do it for him, and that the appeal will be incorporated into the file which will be sent to the Appeal Board. He also tells the registrant that he may write his own statement "on top of mine" and that he can bring in new information to the Board after the interview. He asks the registrant questions and takes either handwritten or typewritten notes. As he is taking these notes, the registrant is sitting in a chair alongside of him. The registrant is made aware that he has a right to inspect his file and make copies of any document therein.

The statement of the Appeal Agent recited that the defendant was appealing his I-A classification on the grounds that he is a minister in the Jehovah's Witnesses and is a conscientious objector. It also recited the defendant's family and employment background; that he was baptized in water and ordained as a minister at the Melrose Unit of Kingdom Hall in the Bronx; that the highest officer of that Congregation is Servant Brother Oliver Aaron; that said Congregation consists of 130 active ministers, seven regular pioneers, account servants and publisher servants; that the defendant was an assistant account servant and an assistant Bible study conductor; that since January of 1965 he "placed" about 200 publications of various types and maintained records of his purchases on a card form furnished by "Watchtower'; that he devotes 15–20 hours per week to Bible studies and preaching; that his name has not yet appeared on any program of his congregation although he has given some lectures to groups of his congregation; that he expected to have his name mentioned on a program in connection with a one hour lecture in the future; that he has devoted 80 hours to a lecture entitled "Why Jehovah's are different"; that during 1962 and 1964 he was a Vacation pioneer for a one month and two week periods during which he devoted 100 and 75 hours, respectively; that he is a member of the Watchtower Bible and Tract Society of Pennsylvania. The statement then related defendant's religious beliefs relative to his claim as a Conscientious Objector; referred to two letters in his file—one from a Charles Sealy, Account Servant of the Melrose Unit of the Jehovah's Witnesses, and one from Ann Goodson, an old family friend; recited that, while in school, the defendant would neither salute the flag nor pledge allegiance and that he would not now participate in either combatant or non-combatant service.

The statement prepared by the Appeal Agent does not contradict anything contained in the defendant's Form 54. It supplements the information contained in the Form 54 about the defendant's ministerial activities in the following respects: (1) the greater detail in which the statement discussed his activities as a lecturer; (2) the mention of his one month tenure as a "Vacation Pioneer" in 1962; (3) the amount of "Watchtower" publications he had recently distributed and (4) the amount of time he had devoted to his Bible studies. The defendant

testified that the Appeal Agent did not tell him that he could file a written reply to said statement; that he did tell the defendant that the statement would be sent to the Appeal Board; that the defendant had told the Agent everything that was contained in the statement, but that he did not know the final form in which the statement would be prepared; that had he been given a copy of the statement and an opportunity to reply thereto, he would have stated "some of the principles involved why I would not enter into the Armed Services."

On April 30, 1965, defendant's file was forwarded by the Local Board to the Appeal Board and on February 9, 1966, the Appeal Board placed the defendant in class I-O. That was the last classification given the defendant who has stipulated that this classification has a basis in fact.

Subsequently, the Local Board ordered defendant to report for a physical examination, which was conducted on March 17, 1966. On March 24, 1966 a Statement of Acceptability (DD Form 62) was mailed to the defendant indicating that he was physically qualified for duty in the armed forces. On April 28, 1966 defendant's processing as a conscientious objector was commenced when Selective Service System Form 152 was mailed to him. This form provides a registrant with the opportunity to propose three types of civilian work which he offers to perform in lieu of induction. See 32 C.F.R. § 1660.20(a) [3] and Local Board Memorandum No. 64,[4] directions from the Director of Selective Service (Director) to all local boards. On May 10, 1966, the defendant returned this form unanswered to the Local Board. In a letter dated May 8, 1966 and received by the Local Board on May 10, 1966, the defendant wrote: "Please make note of the stand I previously stated and made in regards of my claim of being an Ordain Minister of the Most High God. Because of this fact I cannot list my qualifications enabling me for civilian work for this would be a matter of compromising which would be contrary to the scriptures. * * * I cannot serve in lieu of induction, because of my being an Ordain Minister."

Pursuant to 32 C.F.R. § 1660.20(b),[5] the Local Board, by letter dated May 11,

3. 32 C.F.R. § 1660.20(a).
"When a registrant in Class I-O has been found qualified for service in the Armed Forces after his armed forces physical examination or when such a registrant has failed to report for or to submit to armed forces physical examination, he shall, within ten days after a Statement of Acceptability (DD Form 62) has been mailed to him by the local board or within ten days after he has failed to report for or submit to armed forces physical examination, submit to the local board three types of civilian work contributing to the maintenance of the national health, safety, or interest as defined in section 1660.1, which he is qualified to do and which he offers to perform in lieu of induction into the Armed Forces. If the local board deems any one of these types of work to be appropriate, it will order the registrant to perform such work, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I-O, unless he has volunteered for such work."

4. Local Board Memorandum No. 64.
"A registrant in Class I-O who has not volunteered for civilian work in accordance with paragraph 2 of this memorandum, shall be mailed a Special Report for Class I-O Registrants (SSS Form No. 152) within ten days after a Statement of Acceptability (DD Form 62) has been mailed to him or within ten days after he has failed to report for or submit to armed forces physical examination. Thereafter, the registrant shall be processed in accordance with the pertinent provisions of section 1660.20 of the regulations." Paragraph 4(a).

5. 32 C.F.R. § 1660.20(b).
"If the registrant fails to submit to the local board types of work which he offers to perform, or if the local board finds that none of the types of work submitted by the registrant is appropriate, the local board shall submit to the registrant by letter three types of civil-

1966, offered the defendant three types of civilian work to be performed in lieu of induction: "Employment in Hospital Work, Institutional Work or Welfare Work in Kings Park State Hospital, Kings Park, New York, or in any other State Hospital or Public Institutions that are on the list of approved civilian work." The defendant was requested to reply within ten days as to whether he accepted or rejected any or all of the above types of employment. By letter dated May 21, 1966 and received by the Local Board on May 24, 1966, the defendant wrote: "As being a conscientious objector and most important of all an ordain Minister of Jehovah God, I cannot willfully or forcefully accept your assignment for Civilian duty."

Pursuant to 32 C.F.R. § 1660.20(c),[6] the Local Board, by a letter dated June 9, 1966, scheduled an interview for the defendant with the Board and a representative of New York City Selective Service Headquarters on June 16, 1966. On that date, the Board met with the defendant and Captain Maher, a representative of New York City Selective Service Headquarters. At this meeting, the Board renewed its offer of the three types of civilian work contained in its letter of May 11. According to the Local Board's minutes of that meeting, defendant refused to perform civilian work and stated that "his life wouldn't be worth much if he compromises himself and takes civilian work." It is significant to note that the defendant expressed similar sentiments after being ordered to report for civilian work on October 3, 1966. By letter dated October 3, 1966, defendant wrote to the Local Board: "I will not complete your obligations you have assigned me. This would be a matter of compromising with the civil laws of man. * * * When mans [sic] laws conflict with that of God's, there is no other path to take in my case but the written inspired word of God. Being neutral in aim and free from state or Government of any sort I am a representative of the Great Creator. Therefore I refuse for in lieu of induction for civilian work."

At the June 16 meeting, the Local Board recommended institutional work at Kings Park State Hospital. Thereafter the defendant's file was forwarded through appropriate channels to the Director for his approval of the work recommended by the Local Board. See 32 C.F.R. § 1660.20(d).[7] That approval was

---

ian work contributing to the maintenance of the national health, safety, or interest as defined in section 1660.1 which it deems appropriate for the registrant to perform in lieu of induction. The registrant, within ten days after such letter is mailed to him by the local board, shall file with the board a statement that he either offers to perform one of the types of work submitted by the board, or that he does not offer to perform any of such types of work. If the registrant offers to perform any one of the three types of work, he shall be ordered by the local board to perform such work in lieu of induction, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I-O, unless he has volunteered for such work."

6. 32 C.F.R. § 1660.20(c).
   "If the local board and the registrant are unable to agree upon a type of civilian work which should be performed

by the registrant in lieu of induction, the State Director of Selective Service for the State in which the local board is located, or the representative of such State Director, appointed by him for the purpose, shall meet with the local board and the registrant and offer his assistance in reaching an agreement. The local board shall mail to the registrant a notice of the time and place of this meeting at least 10 days before the date of the meeting. If agreement is reached at this meeting, the registrant shall be ordered by the local board to perform work in lieu of induction in accordance with such agreement, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I-O unless he has volunteered for such work."

7. 32 C.F.R. § 1660.20(d).
   "If, after the meeting referred to in paragraph (c) of this section, the local board and the registrant are still unable to agree upon a type of civilian work

received by the Board on September 20, 1966, and it determined at a meeting held the next day to send the defendant an Order to Report for Civilian Work (SSS Form 153) at Kings Park State Hospital. On October 3, 1966, the date on which the defendant was ordered to report, the defendant did report to the Local Board as required, but did not thereafter report to Kings Park State Hospital pursuant to the Board's instructions, whereupon this indictment was returned.

## Appeal Agent

■ The defendant's contention, that he was denied due process because he was not furnished a copy of the statement prepared for him by the Government Appeal Agent and was not given an opportunity to reply thereto, is similar to that raised by the defendant, and rejected by the court, in *Mendoza*. It is rejected in the instant case for substantially the same reasons stated in *Mendoza*.

Defendant, as did the defendant in *Mendoza*, argues that Application of Kanas, 385 F.2d 506 (2d Cir. 1967), controls the case at bar. However, *Kanas*, is distinguishable on several grounds. Unlike *Kanas*, where the Government Appeal Agent filed a statement with the Appeal Board without consulting the registrant, Gilmore knew that the Agent was placing a statement in his file and also that the file would be forwarded to the Appeal Board. Although defendant's file was forwarded to the Appeal Board on the same day that the Agent's statement was added to it, he could have inspected the statement and filed one of his own at any time prior to the rendering of the Appeal Board's decision.

*Kanas* is also distinguishable on a second ground. In the instant case there was nothing in the statement filed by

the Government Appeal Agent which could be deemed prejudicial to the defendant's claim for a ministerial exemption. Indeed, the defendant testified that the only thing that he would have wished to add to the statement was "some of the principles involved why I would not enter into the Armed Services." But a statement of such "principles," while they might be relevant to the sincerity of defendant's conscientious objection to participation in war, would seem of no relevance to whether defendant was a regular or duly ordained minister of religion who, as his customary vocation, preaches or teaches the principles of religion. See 50 U.S.C. App. § 466(g).

## Physical Examination

■ The Local Board initiated defendant's processing by mailing SSS Form 152 to him only thirty-five days after the Statement of Acceptability (DD Form 62) was mailed to him. Although Local Board Memorandum No. 64 directs that this form be mailed to I-O registrants within ten days of the mailing of DD Form 62,[8] defendant has shown no prejudice by virtue of the Board's tardiness. Even assuming that failure to comply with that Local Board Memorandum would in some cases invalidate a subsequent order of a local board, a procedural irregularity does not invalidate a local board order in the absence of a showing that a registrant is prejudiced thereby. See, e. g., United States v. Sturgis, 342 F.2d 328 (3d Cir.), cert. denied, 382 U.S. 879, 86 S.Ct. 164, 15 L.Ed.2d 120 (1965). Defendant's contention that this "requirement" is constitutionally compelled is the same as that raised by the defendant in *Mendoza* and is rejected for the reasons stated therein.

which should be performed by the registrant in lieu of induction, the local board, with the approval of the Director of Selective Service, shall order the registrant to report for civilian work contributing to the maintenance of the national health, safety, or interest as defined in section 1660.1 which it deems

appropriate, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I-O, unless he has volunteered for such work."

8. See note 4, supra.

### Timely Notice

■ Defendant claims that since 32 C.F.R. § 1660.20(c) required the Board to give him at least ten days notice of the meeting with said Board and Captain Maher, the Board's informing the defendant, by letter dated June 9, 1966, of a meeting on June 16, 1966 deprived him of due process of law. This argument is without merit. Absent a showing of prejudice to the registrant involved, a local board's failure to comply with Selective Service Regulations does not constitute a defense to a criminal prosecution. United States v. Sturgis, supra. No such prejudice is present in the instant case. It is evident from a reading of 32 C.F.R. § 1660.20(c) that the purpose of the meeting provided for in that section is to reach an agreement as to an appropriate type of civilian employment to be performed by a Class I-O registrant. Thus, the only conceivable prejudice that inadequate notice of said meeting would visit upon a Class I-O registrant would be to afford him an insufficient time to investigate employment possibilities and thereby prevent him from making an effective contribution to the discussion at said meeting. In the instant case, however, it is apparent from the defendant's letters to the Local Board and from his declaration at the June 16 meeting that he never intended to report for civilian work or to investigate the possibilities of finding such employment. It was the defendant's firm resolution to follow the dictates of his conscience, not the Board's inadequate notice of the June 16 meeting, that engendered the fruitlessness of that meeting.

### Determination of Availability of Civilian Work

Defendant argues that the Local Board's order to report for civilian employment was invalid because the Board, in violation of Local Board Memorandum Number 64,[9] failed to make a determination, prior to the issuance of said order, that said civilian work was available at Kings Park State Hospital. This argument is without merit. Assuming, arguendo, that said Memorandum has the force of law and is thus binding on the Local Board, the court finds that the required determination of availability was made. The minutes of the Local Board's June 16, 1966 meeting with the defendant and Captain Maher indicate that the registrant was advised that appropriate civilian work was available at King's Park State Hospital. Defendant contends that, absent direct proof that the Local Board possessed current information about the availability of civilian work at said hospital, the fact that the Local Board advised the defendant that work was available should not persuade the court that said advice was preceded by a determination that the work was, in fact, available. The court, however, finding nothing in the record indicating that the Board had a motive for being untruthful at the June 16 meeting, is so persuaded.

### Right to Counsel

■ The contention that the defendant was deprived of his rights under the Fifth and Sixth Amendments to the Constitution because he was denied the right to be represented by counsel before his Local Board is rejected for the same reasons stated in Mendoza.

The court finds the defendant guilty as charged in the indictment. This opinion constitutes the court's findings of fact and conclusions of law. The attorney for the defendant and the Assistant United States Attorney who tried this case on behalf of the Government are directed to confer with the court im-

---

9. Local Board Memorandum No. 64.
   "Whenever it becomes necessary to order a registrant to perform civilian work under the provisions of section 1660.20(d) of the regulations, the local board shall determine the type of approved civilian work it deems appropriate to be performed by the registrant and that such work is available. * * " Paragraph 4(d).