**UNITED STATES of America**

v.

**Frank Alex SMITH, Defendant.**

**No. 68–CR–41.**

United States District Court
E. D. New York.

Jan. 15, 1969.

Joseph P. Hoey, U. S. Atty., Eastern District of New York, for United States of America; Michael Rosen, Frank R. Natoli, Asst. U. S. Attys., of counsel.

Koozman & Hartman, New York City, for defendant; George H. Hartman, New York City, of counsel.

ZAVATT, Chief Judge.

This is a criminal prosecution under the Military Selective Service Act of 1967, 50 U.S.C. App. §§ 451–71, tried to the court without a jury pursuant to Rule 23(a) of the Federal Rules of Criminal Procedure. Defendant is charged with knowingly failing and neglecting to perform a duty required of him under that Act, namely to report to his local draft board for instructions concerning his assignment to perform civilian work at New Jersey State Hospital in lieu of induction, in violation of 50 U.S.C. App. §§ 456(j), 462(a). There is no dispute as to whether defendant did in fact knowingly

fail and neglect to report to his Local Board for such instructions, and the court finds beyond a reasonable doubt that he did knowingly fail and neglect to so report.

Defendant raises several questions of law in support of his contention that his failure to so report was not in violation of the aforesaid statutes. He claims:

(1) that no valid order directing him to report for civilian work was ever issued by the Local Board;

(2) that he was denied due process of law in that he was not furnished a copy of the report of the Government Appeal Agent, included in his Selective Service file, and was not given an opportunity to reply thereto;

(3) that he was denied due process and equal treatment under the Selective Service Regulations because his "processing" for civilian work was not commenced within ten days after he was found physically acceptable, as allegedly required by 32 C.F.R. § 1660.20(a);

(4) that he was denied the right to be represented by counsel before the Local Board contrary to the Fifth and Sixth Amendments to the Constitution.

This is one of three similar cases tried to the court on the same day, in each of which the defendant was represented by the same counsel. The others are United States of America v. Mendoza, 295 F.Supp. 673 and United States of America v. Gilmore, 295 F. Supp. 684. A comprehensive opinion in *Mendoza* is being filed simultaneously herewith.

Defendant was duly registered with Selective Service Local Board No. 48, Brooklyn, N. Y. Thereafter, and on November 25, 1964, the Local Board mailed to the defendant Selective Service System Form No. 150, a special form for conscientious objectors. The defendant completed his answers on this form and returned it to the Local Board on or about December 7, 1964. In his answers, the defendant, in addition to setting forth the nature of his con-

scientious objection to the use of force, recited that he was affiliated with the Franklin Unit of Jehovah's Witnesses in Brooklyn. On January 15, 1965, the Local Board mailed to the defendant New York City Form No. 54, a questionnaire to be answered by registrants claiming to be conscientious objectors and/or ministers of religion. The defendant completed that form and returned it to the Local Board on or about January 26, 1965. In his answers, the defendant discussed the nature and extent of his activities as a minister in the Jehovah's Witnesses. He was classified I-A by that Board on February 18, 1965, and again on March 18, 1965 following a personal appearance before the Board. The defendant notified his Local Board that he wished to appeal the I-A classification. On May 6, 1965, and before the Local Board forwarded the defendant's appeal to the Appeal Board, it directed the defendant to meet with the Government Appeal Agent.

On May 13, 1965 the defendant conferred with said Agent who prepared a written statement for inclusion in the defendant's Selective Service file that was to be sent to the Appeal Board. The defendant signed this statement but did not receive a copy thereof. The Appeal Agent testified that his normal procedure, upon interviewing a registrant, is to tell him that his (the Agent's) responsibility is to ensure that the file to be sent to the Appeal Board is sufficiently complete and accurate to protect the registrant's rights on appeal; to tell the registrant that, since the file is the only material that will be considered on appeal, the purpose of the interview is to elicit any additional material that ought to go in the file. The registrant is then asked what additional information he would wish placed in the file. After the registrant volunteers this information, the Agent then asks questions "which I think, may, perhaps, change his situation." As the registrant is speaking, the Agent takes typewritten notes. When the Agent is finished typing, he shows the regis-

trant the paper and asks him if there are any additions or corrections he wishes to have made. Finally, the Agent draws a line on the paper on which he asks the registrant to sign "to show that he read it." The statement prepared for the defendant by the Government Appeal Agent, dated May 13, 1965, stated that, after the defendant had filed his Form 54, he had been relieved of his duties at his then present congregation and was now working at the Bergen Congregation in Brooklyn; that defendant's duties in his new congregation were the same as those performed in his former congregation, except that, in his new congregation, he did not have "oversight of the Service Intergroup." Neither the Form 54 nor the Form 150 mentioned this group. The statement concluded that "by virtue of the above and all the information and data heretofore submitted in his file, the Registrant * * * prays for a IV-D classification." As to his interview with the Appeal Agent, the defendant testified that the Agent did not tell him that he had a right to file a statement of his own in connection with the appeal; that there was nothing in the statement with which he disagreed. He testified that, had he had an opportunity to reply to the statement prepared for him by the Appeal Agent, he

would have elaborated on the fact that he had been relieved of his duties in one congregation and was working in another congregation; that the Appeal Agent did not tell him that he had the right to place in his file an explanation as to why he was relieved of said duties.

On May 14, 1965, one day after the Appeal Agent prepared his statement, the defendant's file was sent to the Appeal Board. The Local Board ordered defendant to report for a physical examination which was conducted on June 22, 1965. On June 30, 1965, a Statement of Acceptability (DD Form 62) was mailed to the registrant indicating that he was physically qualified for duty in the armed forces. On October 17, 1966, defendant was classified I-O by a unanimous vote of said Board. That was the last classification given the defendant, and he has stipulated that this I-O classification has a basis in fact.

Not until January 19, 1967, was SSS Form 152 mailed to the defendant. This Form provides a class I-O registrant with an opportunity to propose three types of civilian work which he offers to perform in lieu of induction. See 32 C.F.R. § 1660.20(a) [1] and Local Board Memorandum No. 64,[2] directions from the Director of Selective Service (Director) to all local boards. On January

---

1. 32 C.F.R. § 1660.20(a)
   "When a registrant in Class I-O has been found qualified for service in the Armed Forces after his armed forces physical examination or when such a registrant has failed to report for or to submit to armed forces physical examination, he shall, within ten days after a Statement of Acceptability (DD Form 62) has been mailed to him by the local board or within ten days after he has failed to report for or submit to armed forces physical examination, submit to the local board three types of civilian work contributing to the maintenance of the national health, safety, or interest as defined in section 1660.1, which he is qualified to do and which he offers to perform in lieu of induction into the Armed Forces. If the local board deems any one of these types of work to be appropriate, it will order the registrant to perform such work, but such order

shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I-O, unless he has volunteered for such work."

2. Local Board Memorandum No. 64.
   "A registrant in Class I-O who has not volunteered for civilian work in accordance with paragraph 2 of this memorandum, shall be mailed a Special Report for Class I-O Registrants (SSS Form No. 152) within ten days after a Statement of Acceptability (DD Form 62) has been mailed to him or within ten days after he has failed to report for or submit to armed forces physical examination. Thereafter, the registrant shall be processed in accordance with the pertinent provisions of section 1660.20 of the regulations." Paragraph 4(a).

31, 1967, this Form was returned uncompleted by the defendant. On February 16, 1967, pursuant to 32 C.F.R. § 1660.20(b),[3] the Local Board by letter offered the defendant three types of civilian work he could perform in lieu of induction. On March 1, 1967, the Local Board received a letter from the defendant which advised the Board that he refused all three types of work. Accordingly, on March 13, 1967, the Local Board held a meeting pursuant to 32 C.F.R. § 1660.20(c)[4] at which Captain Thomas Maher, a representative of the New York City Director's office, and the defendant were in attendance. No agreement was reached at this meeting. However, the defendant did indicate a willingness to perform some employment, but he wanted to secure the same himself. The Board encouraged him to do so but, since no agreement could be reached at that time, the Board advised the defendant that it recommended that he perform currently available hospital work at New Jersey State Hospital.

On March 15, 1967, the defendant's file was forwarded through appropriate channels to the Director for his approval of the work deemed appropriate by the Local Board. See 32 C.F.R. § 1660.20 (d).[5] By letter dated March 23, 1967, the Director approved the civilian work recommended by the Local Board. On March 28, 1967, the Clerk of the Local Board, at the direction of the Board, notified defendant that the Board had received the authorization of the Director to issue an Order to Report for Civilian Work. The defendant was also advised that

"as you indicated that you would make effort to obtain approved employment on your own, would you kindly advise

3. 32 C.F.R. § 1660.20(b).
   "If the registrant fails to submit to the local board types of work which he offers to perform, or if the local board finds that none of the types of work submitted by the registrant is appropriate, the local board shall submit to the registrant by letter three types of civilian work contributing to the maintenance of the national health, safety, or interest as defined in section 1660.1 which it deems appropriate for the registrant to perform in lieu of induction. The registrant, within ten days after such letter is mailed to him by the local board, shall file with the board a statement that he either offers to perform one of the types of work submitted by the board, or that he does not offer to perform any of such types of work. If the registrant offers to perform any one of the three types of work, he shall be ordered by the local board to perform such work in lieu of induction, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I-O, unless he has volunteered for such work."

4. 32 C.F.R. § 1660.20(c).
   "If the local board and the registrant are unable to agree upon a type of civilian work which should be performed by the registrant in lieu of induction, the State Director of Selective Service for the State in which the local board is located, or the representative of such State Director, appointed by him for the purpose, shall meet with the local board and the registrant and offer his assistance in reaching an agreement. The local board shall mail to the registrant a notice of the time and place of this meeting at least 10 days before the date of the meeting. If agreement is reached at this meeting, the registrant shall be ordered by the local board to perform work in lieu of induction in accordance with such agreement, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I-O, unless he has volunteered for such work."

5. 32 C.F.R. § 1660.20(d).
   "If, after the meeting referred to in paragraph (c) of this section, the local board and the registrant are still unable to agree upon a type of civilian work which should be performed by the registrant in lieu of induction, the local board, with the approval of the Director of Selective Service, shall order the registrant to report for civilian work contributing to the maintenance of the national health, safety, or interest as defined in section 1660.1 which it deems appropriate, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I-O, unless he has volunteered for such work."

this Local Board within the next ten days as to your success in obtaining such employment?

If you have not been successful, we will issue an Order for you to Report for Civilian Work at the above named agency [New Jersey State Hospital]."

This letter indicates to the court that the Board had already determined to order defendant to report, but was merely postponing official notice to the defendant and a precise date in order to enable him to secure his own employment. On March 29, 1967, prior to the expiration of the ten day period referred to in the letter, the Clerk of the Board mailed SSS Form 153 to the defendant, ordering him to report to the Local Board on April 10, 1967, for instructions concerning employment at the said hospital. However, defendant was not prejudiced by the Clerk's failure to afford him the full ten days. On April 3, 1967, the Local Board received a letter from the defendant indicating that he "will no longer seek civilian employment" since that would be "giving you (the government) authority and power over my life, which right is only reserved for Almighty God." The Board did not meet to discuss the defendant's case from March 13, 1967 (the date of the meeting attended by Captain Maher) through March 29, 1967 (the date the SSS Form 153, signed by the Clerk of the Board, was mailed to the defendant). The defendant did not appear at the Local Board on April 10, 1967, whereupon this indictment was returned.

### Order to Report for Civilian Work

█ The defendant questions the validity of the order of the Local Board, dated March 29, 1967, to report on April 10, 1967 for instructions as to civilian work to be performed at New Jersey State Hospital on precisely the same ground raised by the defendant in *Mendoza*. This contention is rejected for the reasons stated in this court's opinion in *Mendoza*. The critical exercise of administrative judgment was made by this defendant's Local Board on March 13, 1967. Since the defendant notified his Local Board that he would not seek employment on his own initiative (as he had indicated previously he would), no circumstances intervened between March 13, 1967 and the order to report on April 10, 1967 to alter the Local Board's administrative judgment. The mailing of that order by the Clerk was merely ministerial. Another meeting of the Board was not required.

### Appeal Agent

The defendant's contention, that he was denied due process because he was not furnished a copy of the statement prepared for him by the Government Appeal Agent and was not given an opportunity to reply thereto, is similar to that raised by the defendant, and rejected by the court in *Mendoza*. It is rejected in the instant case for substantially the same reasons stated in *Mendoza*.

Defendant, as did the defendant in *Mendoza*, argues that Application of Kanas, 385 F.2d 506 (2d Cir. 1967), controls the case at bar. However, that case is distinguishable on several grounds. Unlike *Kanas*, where the Government Appeal Agent filed a statement with the Appeal Board without consulting the registrant, Smith not only knew that the Agent was going to file a statement, but also, as evidenced by his signature on the statement, knew the contents thereof. Moreover, defendant had an opportunity to reply to said statement. Upon being shown the statement he had an opportunity to request that changes or additions be made, and in addition, he could have filed a statement of his own at any time prior to the rendering of the Appeal Board's decision.

█ *Kanas* is distinguishable on a second ground. In the instant case

696

there was nothing in the statement filed by the Government Appeal Agent which could be deemed prejudicial to the defendant's claim for a ministerial exemption. Indeed, the defendant himself testified that the only thing he would have wished to have added to the Appeal Agent's statement was an explanation of why he had been relieved of his duties at one congregation and was at a different congregation. But the court cannot see how this is relevant to whether defendant was, in fact, a regular or duly ordained minister of religion who, as his customary vocation, preaches or teaches the principles of religion. See 50 U.S.C. App. § 466(g).

### Physical Examination

The defendant contends, as did the defendant in *Mendoza*, that the Local Board failed to commence processing him as a conscientious objector within ten days after it mailed him the Statement of Acceptability and that this invalidates the order to report for instructions as to civilian work to be performed by the defendant. This contention is rejected for the reasons stated in *Mendoza*.

### Right to Counsel

■ The contention that the defendant was deprived of his rights under the Fifth and Sixth Amendments to the Constitution because he was denied the right to be represented by counsel before his Local Board is rejected for the same reasons stated in *Mendoza*.

The court finds the defendant guilty as charged in the indictment. This opinion constitutes the court's findings of fact and conclusions of law. The attorney for the defendant and the Assistant United States Attorney who tried this case on behalf of the Government are directed to confer with the court immediately upon receipt of a copy of this opinion to arrange a date for the appearance of the defendant before the court.