The **UNITED STATES** of America

v.

Howell Rayful **BROWN** a/k/a
Howell Brown.

Crim. A. No. 23330.

United States District Court
E. D. Pennsylvania.

May 21, 1969.

Drew J. T. O'Keefe, U. S. Atty., Merna B. Marshall, J. Raymond McGill, Asst. U. S. Attys., for the Eastern Dist. of Pa., for the United States.

Charles Butterworth, Philadelphia, Pa., for defendant.

## OPINION

JOHN MORGAN DAVIS, District Judge.

After trial without a jury, the defendant was found guilty of refusing to obey an order of his local draft board to submit to induction, in violation of Title 50 Appendix §§ 454 and 460.

Before the Court are defendant's motions for judgment of acquittal, for a new trial, and for the declaration of a mistrial. In support thereof, the defendant has raised thirteen allegations of error. All essentially involve the assertion that the defendant was entitled to a 1V–D (ministerial) exemption, in addition to a 1–O classification as a conscientious objector.

Initially, the defendant asserts that his Local Board erred in failing to reopen his 1–A classification, upon receiving notice of his claim for ministerial exemption. A brief recitation of the chronology of events is required.

In 1961 the defendant registered with his Local Board. In July 1963, he received, prepared and returned his classification questionnaire (Form 100). No CO status or ministerial exemption were claimed therein. In due course then, he was classified 1–A. On May 20, 1964, he was ordered to report for a physical examination. Twelve days later, he was found qualified for military service. However, on June 16, 1964, the defendant filed a "conscientious objector" form with his Local Board (Form 150). Based on the information contained therein, the Local Board reviewed the defendant's case, but rejected his CO claim. The defendant was so notified by letter dated July 21, 1964.

One week later, the defendant wrote to the local board, and requested an "audience * * * to establish my religious conviction *and* my ministerial activities" (emphasis supplied). As requested, an interview with the Local Board was conducted on October 5, 1964. At this interview, the defendant was expressly advised to "get a letter from Watch Tower Headquarters and send same to this Local Board," for the purpose of establishing his right to a ministerial exemption.

Had the defendant complied with this advice, and produced a letter or other

competent evidence from the Watch Tower Society, there is little doubt that any right to a 1V–D exemption would have been adequately established. Instead, the defendant submitted a statement, (D.Ex. 1), not from the Watch Tower Society, but from his overseer. The statement, however, was returned on October 13, 1964 (D.Ex. 2), since it pertained to both the defendant *and* his brother. Explicit instructions were given to the defendant to obtain and submit *separate* letters. This was not done.

Parenthetically, we note that even if the statement would have been retained and considered by the Board, it was of little probative value. In fact, it was inconsistent with the defendant's assertion that he was entitled to a ministerial exemption, since it did not indicate that the defendant was a "Pioneer", the first level wherein a ministerial exemption would normally be authorized. Based on the evidence contained in the file, the Local Board again reconsidered the defendant's case, but properly concluded that the 1–A classification should be retained. The defendant then filed a notice of appeal. However, the defendant also requested the opportunity to "present new evidence" (Letter dated Oct. 25, 1964). Since the Appeal Board, as an appellate tribunal, does not receive evidence *de novo*, the defendant again was advised to "present any new evidence to your local board." (Letter dated October 27, 1964). No such evidence was presented to the Local Board.

The Appeal Board then certified the matter to the Department of Justice for an advisory recommendation. This took twenty months. On the basis of his interview with the defendant, the Hearing Officer concluded that the defendant's proof was insufficient to sustain his CO claim. In addition, the defendant made no effort to present any tangible evidence of his "Pioneer" ministerial status, although he admitted having such a document in his possession at the time of the hearing.

The Department of Justice concurred in the findings of the Hearing Examiner, and recommended that the defendant *not* be classified in class 1–O or in class 1–A–O.

On October 26, 1966, the Appeal Board reviewed the entire file, and adopted the recommendation of the Department of Justice. Seven weeks later, an induction order was issued (S.S. Form No. 250). On January 4, 1967, the defendant refused to submit to induction, and this criminal prosecution followed in due course.

■ As recited above, the defendant was given at least three opportunities to submit evidence of his claim for ministerial exemption. In each and every instance he elected not to comply. Had he presented a letter which emanated from the Watch Tower Society (marked D–4–A and B, but not admitted into evidence because not properly authenticated), there is little doubt that he would have established his right to a ministerial exemption. Having deliberately refused to bring this to the attention of the Local Board (and the Hearing Examiner), the defendant cannot *now* seriously assert that he was "denied basic fairness in the administrative procedure." He was given ample opportunity to set forth any and all evidence in furtherance of his position. The ministerial exemption contention was considered by the Hearing Officer, the Department of Justice and by the Appeal Board on the basis of the evidence appearing in the defendant's Selective Service file, in accordance with Regulation 1626.24. This is the extent of the Board's legal function. The file does indicate that the defendant presented "Publisher Reports" to the Hearing Officer, on March 26, 1966, indicating the number of hours spent in religious endeavors. However, since "Publisher" is regarded as an ordinary member, this was not sufficient for a 1V–D classification. See Rogers v. United States, 263 F.2d 283, 286 (9th Cir. 1959).

■ The defendant now asserts that the Appeal Board did not have sufficient information to enable it to classify him regarding the ministerial exemption con-

tention. However, again, the Appeal Board is restricted to the consideration of four classes of information recited in Regulation 1626.24.[1] In addition, the principal burden of establishing entitlement to an exemption is upon the registrant, not the Board. As set forth above, the defendant failed to submit the requisite evidence, although he freely admitted during trial that he had it in his possession. The paucity of any contrary information submitted to the Local Board by the defendant, left the Appeals Board with no reasonable alternative but to affirm the 1–A classification.

The defendant also asserts that the Local Board, " * * * without sufficient or legal cause returned a statement relative to his ministerial claim * * * instead of placing it in his file."

As previously mentioned, this statement was returned since it was submitted by the defendant's brother *both* registrants—the Local Board merely instructed that *individual* original statements should be obtained and submitted. This was a rather simple and not unreasonable procedural request. However, the defendant elected not to comply.[2]

In addition, as previously observed, the statement had little probative value regarding a ministerial exemption, since it merely established that the defendant was a member of the congregation, and not in a position of leadership, as defined by Section 16(g) Selective Service Act 50 U.S.C. App. § 466(g). See also Fitts v. United States, 334 F.2d 416 (5th Cir. 1964). By his own admission, the defendant was not a Pioneer in 1964; he was awarded this status by the Watch Tower Society on January 27, 1966 (D. 4 Ex. A and B).

Turning now to the defendant's contention regarding the conscientious objector status, it is asserted that there was no indication in the record that he was insincere; therefore he concludes, the Board had no basis in fact to deny the 1–O classification. After independently reviewing the record, I cannot conclude that the Hearing Examiner and the Local Board were manifestly unreasonable in their analysis of the defendant's evidence and assertions, and the conclusion derived therefrom. The defendant places great emphasis upon the fact that when questioned regarding his conscientious objector claim, he recited biblical phrases such as "Those who live by the sword shall die by it", and "You must love your neighbor as yourself." However, there are many faiths which embrace these biblical teachings, but which do not conclude that they are a *theological mandate against participation* in warfare. The mere recitation by rote of isolated scriptural passages is in itself, insufficient to establish subjective religious convictions. Our review of the record indicates, however, that the defendant was given ample opportunity to elaborate upon and substantiate his conscientious objector contention.

Similarly, the submission of brochures to the Hearing Examiner may have established the dogma or doctrine of the Jehovah's Witness, faith, but certainly was insufficient in itself to permit a hearing examiner to definitely pass upon the defendant's *subjective* beliefs. The function of the Board is to:

> * * * decide whether the beliefs *possessed by a registrant* are sincerely held, and whether they are, *in his own scheme of things*, religion.

1. Regulation 1626.24 states in relevant part that the appeal board " * * * shall not receive or consider any information other than * * *
   1. Information contained in the record received from the local board.
   2. General information concerning economics, industrial and social conditions.
   3. Any advisory recommendation from the Department of Justice * * *
   4. Any reply to the recommendation of the Department of Justice received from the registrant * * * * "

2. See United States v. Gerald Lee Brown, Criminal No. 23078, Opinion by Wood, J. May 6, 1969.

United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) (emphasis added).

■ We cannot conclude after reviewing the merits of the defendant's assertions that the conclusion of the Board was without any basis in fact. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); United States v. Spiro, 384 F.2d 159 (3rd Cir. 1967). The mere fact that a registrant files Form 150 seeking CO status is not dispositive of the issue in his favor. The Board is entitled and indeed *required* to further examine a registrant for the purpose of substantiating this assertion.

■ Next, the defendant contends that he was denied "basic fairness", in that a list of Selective Service advisors was not posted at the Local Board office, as required by Regulation 1604.1. The Clerk of the defendant's Local Board testified that advisors had been appointed "for a long time," but she did not know if they were physically posted in 1964 or 1966, when the defendant actually visited the office. However, she did indicate that the names of the advisors were in a book, readily available to anyone so inquiring. The defendant admitted that he never asked for any such assistance.

There has clearly been no showing that the defendant was prejudiced by failure to post advisors (assuming *arguendo,* that such was the case). See United States v. Sturgis, 342 F.2d 328, 331 (3rd Cir. 1965); United States v. Jones, 384 F.2d 781 (7th Cir. 1967). Mere conjecture or speculation in this regard is clearly insufficient to warrant acquittal.

■ Next, it is asserted that the induction order was illegal, since it was signed by the Clerk of the Local Board, rather than by a Board member. It is true that Regulations 1632.1 and 1631.7 require the Board to select and order registrants to report for induction. However, SS Form No. 252, entitled "Order To Report For Induction", specifically authorizes the order to be *signed* by "Member or Clerk of Local Board." In the instant case, the Clerk, Rita M. Oryl, appropriately scratched over the word "Member", and appended her signature as Clerk. Since the form has been incorporated into the Selective Service Regulations by reason of Regulation 1606.51,[3] the relegation of signatory authority to the Clerk was not improper. Having been duly classified "1–A" by the Local Board, with appropriate administrative review by the Appeals Board, the order for induction was merely ministerial. Consequently, the *substantive* rights of the defendant were not in any way abridged. See United States v. DeNarvaez, 407 F.2d 185 (2nd Cir. 1969).

■ The defendant next claims that he did not possess "full knowledge" that the induction order was "valid", in that he had submitted new information regarding his classification but had never been informed by the Selective Service System that this new information had been considered. The defendant believes that this has some relevance to the issue of intent. He is quite correct. However, considering the evidence presented as a whole, as I must as trier-of-fact, there was ample evidence of intent to refuse to submit to induction to sustain a finding of guilty, beyond a reasonable doubt, including the defendant's own testimony retrospectively setting forth the volitional nature of his refusal to submit to induction.

■ The defendant asserts that the Court erred in quashing a subpoena, seeking to direct a member of the Local Board to testify. An offer of proof revealed that this Board member is reputed to have stated to defense counsel, that when he (the Board member) was Chairman, no 1V–D's were awarded to

---

3. This regulation essentially states that all Selective Service forms shall become part of the Selective Service Regulations.

Thus the Form 252 is at least on equal footing with the language of the Regulations upon which defendant relies.

members of the Jehovah's Witness faith. Instead, these matters were turned over to the Appeals Board for determination. As previously mentioned, after requiring an offer of proof, this Court quashed the subpoena. Assuming *arguendo,* that the Board member would have so testified, this information is of no probative value and of very questionable relevancy, since:

> * * * errors as may have been voiced by members of the local board were rendered innocuous by the subsequent classification by the appeals board. Capehart v. United States, 237 F.2d 388 (4th Cir. 1956).

In addition, the function of this Court in judicially reviewing the actions of the Selective Service System is essentially to ascertain whether the law, both statutory and regulatory, was properly applied to the particular facts of the case at hand. Since the decisions of the Local Board regarding the defendant were always unanimous, it matters little what a Board member may have done in some other case or at some other time. See Clay v. United States, 397 F.2d 901, 914 (5th Cir. 1968), judgment vacated on other grounds 394 U.S. 310, 89 S.Ct. 1164, 22 L.Ed.2d 297 (March 24, 1969). The propriety of the Local Board's decisions have been reviewed at various times, and found to be in accordance with the relevant regulations and statutes, both by this Court and by the Appeals Board.

Finally, it is asserted that grounds for a mistrial have been established, since the Court remarked that the defendant had no need for advisors, and knew procedure very well, as he had managed to avoid the draft all these years. This was nothing more than fair comment upon the evidence adduced at trial. Suffice to say that this Court, as trier-of-fact based its decision solely on the evidence presented.

For the reasons stated above, the defendant's motions are denied.

It is so ordered.