**UNITED STATES of America**
v.
**Wilbert Lee STURGIS, Appellant.**

**No. 15035.**

United States Court of Appeals
Third Circuit.

Argued Dec. 7, 1964.

Decided March 11, 1965.

Herbert W. Yanowitz, Feldman & Waldman, San Francisco, Cal., for appellant.

J. Shane Creamer, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before GANEY, SMITH and FREEDMAN, Circuit Judges.

GANEY, Circuit Judge.

The appellant, Wilbert Lee Sturgis, was indicted for knowingly and wilfully failing to report for assignment to the Norristown State Hospital at Norristown, Pennsylvania, on June 7, 1963, in lieu of induction, to perform civilian work in connection with the maintenance of national health, safety and interest, pursuant to 50 U.S.C. App. §§ 462 and 456-(j).

The appellant waived a jury trial, which was consented to by the Government and approved by the Court, and after a trial of two days, he was convicted and this appeal followed.

The appellant was born on October 19, 1938. At the time he was called by the Draft Board he was attending the Theocratic Ministry School in Philadelphia, Pennsylvania. However, he was also employed on a full-time basis as a stock clerk for a manufacturing concern in Philadelphia. The Draft Board received his Selective Service Questionnaire on August 10, 1958, in which he stated that he was "a minister of religion" of the Society of Jehovah's Witnesses and stated, "I am a student preparing for the ministry under the direction of Jehovah's Witnesses.", and in an accompanying long letter, he described in detail his ministerial work as a Jehovah's Witness.

After filing his Questionnaire with the Draft Board on August 10, 1958, he wrote a letter requesting that his classification be that of Conscientious Objector (I-O) and recited in detail his interest in Jehovah's Witnesses and, among other things, that he was engaged in service work and was baptized in that faith; that he was a regular and customary minister of Jehovah God, "preaching and teaching as a vocation the doctrines and principles of the Bible as advocated by Jehovah's Witnesses."

On August 10, 17 and 18, 1958, the Board received several letters from individuals who praised Sturgis' accomplishments as a teacher of the Bible. On December 12, 1958, the Board received a letter from the appellant requesting Conscientious Objector's status (Class I-O) in which he again gave in great detail his work with Jehovah's Witnesses. The Board, on December 18, 1958, classified him as I-A. He was given a hearing by the Board on January 22, 1959, on his application for ministerial status, at which time he was accompanied by his Mother and again he alleged his unwillingness to go into military service in either a combatant or non-combatant status, saying that he was ordained to preach and teach and not to practice the destruction of mankind. At this time he was averaging some 60-65 hours a month in teaching and visiting, although he was still regularly employed eight hours a day as a stock clerk. The regulations of the Selective Service Act were read to him in detail describing the classification I-O, which permitted him to go into civilian work and not to go into military service at all; Class I-A-O which permitted him to go into the military service, but not to bear arms and merely take care of the stock, etc., as well as Class IV-D which provided for one who is a regular minister of religion. Section 466(g)(2) of the Act provides:

"The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister."

On January 30, 1959, the appellant wrote to the Board rejecting the classification of I-O and appealing for the ministerial

classification of IV–D, again asserting that he was entitled to such classification by virtue of his preaching and work as a Jehovah's Witness. In this letter, he requested a hearing before the Appeal Board. On March 4, 1959, the Appeal Board heard his case and they classified him I–O with the Board voting "yes" for such classification and no dissenting votes for any other classification. On March 11, 1959, the results of the Appeal Board's action were conveyed to the appellant and the Statement of Acceptability with reference to his medical report was received by the Board, wherein he was accepted medically for the armed services either in or out of the same. On October 23, 1961, the Board notified Mr. Sturgis that he was qualified for induction which was presently imminent and enclosed therein a memorandum (SS S 152) regarding the Civilian Work Program for Class I–O registrants. Additionally, he was advised in the letter, "If you have any question, feel free to telephone this Local Board or come in in person." On January 22, 1962, the appellant came into the office of the Board and informed them that he would let them know whether or not he would complete form SSS 152, which is a work classification or qualification of a registrant in civilian work especially, in order to rate him in this capacity. On January 29, 1962, he wrote the Board that, after careful thought and consideration, he would not complete the said form and again recited his beliefs in the tenets of Jehovah's Witnesses and that he was an ordained minister of God and had the capacity of a minister and that he was a Pioneer Minister of that faith. On May 9, 1962, the appellant wrote that he had received the memorandum announcing employment at state and general hospitals, with the Board's suggestion that he accept employment at one of them and he advised the Board that he could not accept the status of Conscientious Objector. On September 28, 1962, he again appeared before the Board with three members thereof present, as well as a representative of the State Director of Selective Service, alleging that there were changes in his status and that he was now a full-fledged Pioneer Minister, as of September 1, 1962. However, he also stated that he was then employed at a rope works in Beverly, New Jersey, on a forty-hour week.

The Board delayed a final decision on the matter pending verification of appellant's new status from the Watchtower Bible and Tract Society, the governing body of the Jehovah's Witnesses. The Society informed the Board that they could not certify Sturgis as a Pioneer Minister until he had worked four months in that capacity. On February 8, 1963, the Board received a second letter from the Society informing them that Sturgis had failed to qualify as a Pioneer. On March 14, 1963, the Board wrote the Selective Service headquarters in Harrisburg that they had never received the notification from the Watchtower Bible and Tract Society certifying that the appellant was a Pioneer Minister. This certification has never been received. On June 7, 1963, the appellant did not appear as ordered to perform civilian work at the Norristown State Hospital. He advised the Board that he would not report and the indictment here under consideration resulted.

■ There can be no question of the appellant's right to judicial review here, as he has complied with all the steps in the selective service process. Falbo v. United States, 320 U.S. 549, 554, 64 S. Ct. 346, 88 L.Ed. 305. A close scrutiny of the record reveals that there was substantial basis in fact for the Draft Board's refusal to grant the IV–D ministerial exemption for the appellant and that the status accorded to him by the Board was a proper one. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132. In fact, the general counsel for the Watchtower Bible and Tract Society indicated in a written memorandum to the National Selective Service Appeal Board that the Society would not claim the ministerial exemption for anyone below the rank of Pioneer.

The scope of judicial review here has been defined in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L. Ed. 567. It was there stated that "final" with respect to the decision of the local board means that Congress chose not to give administrative action under the Act (Selective Training and Service Act of 1940, 50 U.S.C.A. § 311), the customary scope of judicial review which obtains under other statutes. The Courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of local boards when made in conformity with the regulations of these local boards are final. This is true even though the classification is erroneous as long as there is some basis in fact to substantiate the classification given.

In Blalock v. United States, 4 Cir., 247 F.2d 615, at 619, the Court, in describing the scope of review in a prosecution for failing to submit to induction, said: "The range of review is the narrowest known to the law. * * * The 'clearly erroneous' rule applied in equity appeals has no place here, nor even the 'substantial evidence' rule of the Administrative Procedure Act * * *. Congress gave the courts no general authority of revision over draft board proceedings, and we have authority to reverse only if there is a denial of basic procedural fairness or if the conclusion of the board is without any basis in fact. * * *"

It is evident that both the Watchtower Bible and Tract Society and the appellant considered that the minimum status within their hierarchy which would qualify for the ministerial exemption was that of Pioneer. Since Sturgis has failed to obtain certification as a Pioneer, he has failed to meet the minimum standard set by the Society.

At trial, the Court refused to admit certain additional testimony which was not before the Board concerning appellant's activities as a member of the Jehovah's Witnesses, all of which was cumulative to what he had said before the Board on numerous occasions, except that he proffered testimony to show that his religious activities covered seventy hours a month, whereas before the Board, he testified his activities ran to sixty hours a month. Nevertheless, it is significant that throughout his dealings with the Board, he was employed secularly some forty hours per week. Even if we assume that the trial court was erroneous in rejecting this evidence, there can be no question here but what, even if it had accepted it, it would have made no change in the appellant's status since the Board had before it ample evidence sufficient to sustain their findings.

An additional point raised by the appellant is the fact that the Board failed to post the names of advisers conspicuously in its office, as required by Executive Order 10594–20 Federal Register 735. However, this failure, standing alone, is insufficient to set aside the judgment of conviction. The failure to so comply by the Board must be coupled with prejudice to the appellant in order to reach that result. Martin v. United States, 4 Cir., 190 F.2d 775, 779; Knox v. United States, 9 Cir., 200 F.2d 398, 401.

There is a difference of opinion upon whom falls the burden of proof to show such prejudice. In Steele v. United States, 1 Cir., 240 F.2d 142, it is stated that the burden is on the Government to show he was not prejudiced, and in Rowton v. United States, 6 Cir., 229 F.2d 421, it seems the better view that the person asserting it, here the appellant, should have the burden of proving prejudice. The appellant is a high school graduate. At one hearing before the Board his Mother was present and at another hearing a representative of the State Director of Selective Service was present. Appellant had every opportunity to assert his position fully and completely and never once was he refused a hearing before the Board or the Appeal Board and in one instance he was specifically told that if he had any question he should come to the Board for the answer. Accordingly, it is quite evident from the record that had he had advisers, he could not have been more competently informed

**332**

or presented his case more completely than he did. Therefore, even if we accept the view expressed in Steele v. United States, supra, the Government has met the burden.

█ The final objection stated by the appellant is that he was not afforded counsel before the Board. However, the proceedings before the Board are non-judicial in nature and they are clearly non-criminal. The appellant here was neither a suspect nor an accused and he was appearing before Local Board No. 121, which was giving him a hearing only in an administrative proceeding. Therefore, to extend the right of counsel to an individual who is concerned in a non-judicial and non-criminal proceeding would be an unwarranted extension of an individual's right to counsel.

This Court, in United States v. Pitt, 3 Cir., 144 F.2d 169, directly ruled the point that the denial of counsel before the Local Board is not a denial of due process.

Accordingly, the judgment of the lower court will be affirmed.