UNITED STATES of America

v.

Howell Rayful BROWN, a/k/a Howell Brown, Appellant.

No. 18122.

United States Court of Appeals, Third Circuit.

Argued March 6, 1970.

Reargued Nov. 24, 1970.

Decided Jan. 15, 1971.

E. Curry First, Hayes, Peck, Perry & Gerlach, Milwaukee, Wis., for appellant.

Charles B. Burr, II, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Argued March 6, 1970

Before SEITZ, VAN DUSEN and ADAMS, Circuit Judges.

Reargued Nov. 24, 1970

Before HASTIE, Chief Judge, and FREEDMAN, SEITZ, VAN DUSEN, ALDISERT, ADAMS, GIBBONS, and ROSENN, Circuit Judges.

OPINION OF THE COURT

SEITZ, Circuit Judge.

This appeal is from a judgment and commitment entered on a finding of guilty following a trial to the court on an indictment charging a knowing re-

fusal by the defendant to submit to induction into the Armed Forces in accordance with a Local Board order, in violation of 50 U.S.C. App. §§ 454 and 460. United States v. Brown, 300 F.Supp. 627 (E.D.Pa.1969).

In June, 1964 appellant applied to his local board for reclassification as a conscientious objector. Thereafter during the same month he was baptized and became a member of the Jehovah's Witnesses. On July 21, 1964 appellant's local board retained him in class I–A. Appellant appeared before the local board on October 5, 1964, pressing his conscientious objector claim and for the first time claiming a ministerial exemption. In connection with this latter claim, the minutes taken at his personal appearance reveal that appellant was directed to obtain a letter from Watchtower headquarters and send it to the board. The board voted to retain appellant in class I–A on the same day as his hearing. He never submitted the requested letter.

Following his unsuccessful efforts at the local board level, appellant appealed on November 20, 1964. After the appeal board tentatively determined that appellant was not entitled to conscientious objector status, it referred his file to the Department of Justice for investigation of the *conscientious objector* claim pursuant to regulations then in effect. 32 C.F.R. § 1626.25.

Some sixteen months later, on March 26, 1966, appellant appeared before a Special Hearing Officer of the Department of Justice for a hearing on his conscientious objector claim. The Justice Department report relates that appellant claimed "that at the time of the hearing, he was devoting full time to his Jehovah's Witnesses ministry as a 'pioneer.'"[1] This assertion, which appellant may have

believed supported his conscientious objector claim as well as his claim for a ministerial exemption, was in contrast to his concession to the local board in June 1964 that he had not achieved pioneer status. Indeed, there is no evidence that appellant ever asserted pioneer status before the local board.

In addition appellant submitted four letters from co-religionists to the hearing officer. Among those letters was one from the Overseer of a Philadelphia congregation of Jehovah's Witnesses dated March 22, 1966. The letter in part stated: "Mr. Brown has recently begun to serve as a full-time minister; that is, he will be devoting at least 100 hours per month to actual preaching, not counting time spent in preparing for and attending meetings, and such incidentals as travel time to and from ministerial territory, etc." The other three letters from co-religionists as well as his own letter further tended to substantiate appellant's claim to full-time ministerial status within the Jehovah's Witnesses sect. These documents were attached as exhibits to the Justice Department's negative report on appellant's conscientious objector claim which was presented to the appeal board on September 22, 1966. Appellant was sent a copy of the report and was given an opportunity to respond to it.

In his response appellant briefly attempted to rebut the Justice Department recommendation on his conscientious objector claim. However, he addressed himself primarily to pressing his ministerial exemption claim. He submitted several statements asserting his full-time ministerial status and detailing his activities and responsibilities. He also requested an opportunity to present additional substantiation of his full-time ministerial status. The appeal board re-

---

1. All members of the Jehovah's Witnesses are considered "ordained ministers," but this does not entitle all to a ministerial exemption for draft purposes. Camp v. United States, 413 F.2d 419 (5th Cir. 1969). Here, we are using the term "pioneer" only to refer to full-time minis-

ters devoting an average of at least 1200 hours per year to the field ministry. Even the Watchtower Society of Jehovah's Witnesses has accepted this as the minimum standard for a IV–D exemption as a pioneer.

viewed all these materials and rejected both the conscientious objector and ministerial exemption claims. Appellant was subsequently convicted of a refusal to submit to induction.

Initially we are faced with the question whether the appeal board had authority to review materials, not before the local board, which were offered both in support of a ministerial exemption claim and a conscientious objector claim to the Justice Department Hearing Officer and to the appeal board. It is clear that there could be no review of such materials today.[2] At the time appellant's case was before the appeal board, however, the regulations provided for review of *conscientious objector* claims by the Department of Justice. 32 C.F.R. § 1626.25. The appeal board was at that time empowered to consider both the Department's report on the registrant's *conscientious objector* claim and the registrant's reply to that report. 32 C.F.R. § 1626.24. We are convinced that these regulations were not intended to allow new information, not related to the conscientious objector claim, to be considered in the first instance by the appeal board simply because it was included in the Department's report or the registrant's reply. Such information must be submitted to the local board for its initial consideration. 32 C.F.R. § 1625.-1(b). Appellant, however, submitted evidence at the appeal level tending to substantiate his claim that he had achieved full-time ministerial status within his religion some time after the local board refused to reclassify him. Under the circumstances of this case, we believe that the appeal board should have recognized this procedural irregularity and referred such information to the local board for treatment as a request for a reopening of appellant's classification. We think such action was implicitly dictated by selective service regulations, which provide that an appeal board must, in reviewing classifications,

"carefully check each file to determine whether all steps required by the regulations have been taken, whether the record is complete, and whether the information in the file is sufficient to enable it to determine the registrant's classification. If any steps have been omitted by the local board, if the record is incomplete, or if the information is not sufficient to enable the appeal board to determine the classification of the registrant, the appeal board *shall* return the file to the local board with a request for additional information or action." 32 C.F.R. § 1626.23 (emphasis added).

Since we are convinced that appellant could have made out a prima facie case for the ministerial exemption based upon his newly acquired pioneer status, we conclude that he could have compelled a reopening of his classification and was therefore substantially prejudiced by the appeal board's failure to comply with 32 C.F.R. § 1626.23.

Moreover, we do not believe that appellant was required to prove a sufficient case for IV–D classification during his criminal prosecution. The determination whether appellant was entitled to a ministerial exemption was to be made initially by the Selective Service System acting in compliance with its own regulations—not by the district court in a criminal prosecution.

To the extent that it permits an appeal board to consider in the first instance new evidence in support of a ministerial claim, we overrule United States v. Brown (Gerald Lee), 423 F.2d 751 (3d Cir. 1970). In so doing, however, we note that the defendant in that case suffered no prejudice by the appeal board's failure to remand, since his new evidence was insufficient to show a prima facie case and would not have required a reopening of his classification at the local board level.

We conclude that the induction order which appellant refused to obey was in-

2. 32 C.F.R. § 1626.24.

valid and that his subsequent conviction must be reversed. Our disposition of this case does not require us to decide the other issues raised on this appeal, including that as to the correctness of the district court's action in quashing the subpoena addressed to the chairman of the local board for the purpose of examining him at the trial concerning his alleged prejudice against those of appellant's religion. However, we feel compelled to add that we have no doubt that the local board members are subject to the subpoena power. The scope of their examination when responding thereto is, of course, a matter to be determined by the district court in accordance with proper evidentiary principles. Neither do we decide whether appellant's conscientious objector claim was properly denied.

The judgment of the district court will be reversed.

VAN DUSEN, Circuit Judge (dissenting).

My examination of the record before the appeal board as it was returned to the local board in October 1966 indicates to me that it could not support a prima facie case of entitlement to the ministerial exemption provided in 50 U.S.C. App. § 456(g), despite the conviction of the majority to the contrary.[1] 50 U.S.C. App. § 466(g) (1) defines a "duly ordained minister of religion" as "a person * * * who as his regular and customary vocation preaches and teaches

the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization."[2] In Dickinson v. United States, 346 U.S. 389, 394–395, 74 S.Ct. 152, 156, 98 L.Ed. 132 (1953), the Court said:

The ministerial exemption, as was pointed out in the Senate Report accompanying the 1948 Act, "is a narrow one, intended for the leaders of the various religious faiths and not for the members generally." S.Rep. No. 1268, 80th Cong., 2d Sess. 13. Certainly all members of a religious organization or sect are not entitled to the exemption by reason of their membership, even though in their belief each is a minister. Cf. Cox v. United States, 332 U.S. 442 [68 S.Ct. 115, 92 L.Ed. 59] (1947). On the other hand, a legitimate minister cannot be, for the purposes of the Act, unfrocked simply because all the members of his sect base an exemption claim on the dogma of its faith. That would leave a congregation without a cleric. Each registrant must satisfy the Act's rigid criteria for the exemption. Preaching and teaching the principles of one's sect, if performed part-time or half-time, occasionally or irregularly, are insufficient to bring a registrant under § 6(g). These activities must be regularly performed. They must, as the statute reads, comprise the registrant's "vocation." And since the ministerial exemption is a

---

1. *See* p. 1319 of opinion. Initially, it should be noted that the registrant was 21 years of age (his birthdate being 6/3/43) and had completed 3 years of junior high school, 1 year of high school and 1 year of trade school (Automotive Maintenance) when he had his hearing before the local board in October 1964 and thereafter filed his appeal to the Appeal Board in November 1964. This case does not concern a teenage registrant whose education terminated prior to junior high school, but rather the record shows considerable education and advice furnished by the Watchtower Society, including advice on Selective Service procedures. Cf. United States v. Deans, 436 F.2d 596 (3d Cir. 1971).

2. Subsection 3 of 50 U.S.C.App. § 466(g) provides:

The term "regular or duly ordained minister of religion" does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization.

matter of legislative grace, the selective service registrant bears the burden of clearly establishing a right to the exemption.[3]

Due to the following data in the file, I believe there was sufficient information (*see* 32 C.F.R. 1626.23) for the appeal board to determine that the registrant had not made out a prima facie case of entitlement to the IV–D ministerial exemption and hence that remand with a request for additional information was not required.

## I. Failure Of Registrant To Comply With Draft Board Request To Submit Certification Of His Status From Watchtower Society As Requested At October 5, 1964, Local Board Hearing.

After the registrant, in October, 1964, took the position orally during his hearing before the Local Board that he "wanted classification as a minister of religion—Jehovah Witnesses," the Board asked him if he had a congregation, to which question he gave no answer, and then asked him how many hours he worked, to which he answered "24 hours a day,"[4] and then instructed him to "get a letter from the Watch Tower headquarters and send same to the Local Board." The registrant never complied with this instruction and produced no certificate from the "Head-

quarters" until his criminal trial in 1969.

## II. The Confusing Evidence Submitted By The Registrant To The Hearing Officer And The Appeal Board In 1966.[5]

In describing his religious activities in his March 1966 letter delivered to the hearing officer, the registrant conceded that he had only been a full-time minister during four nonconsecutive months of 1965 and the highest number of hours spent preaching[6] in the other months from September 1964 through January 1966 was 45 hours in March 1965, and that in January 1966 he only spent 17 hours in this activity with no time listed for teaching. At this time, he stated that he did "occasional janitorial work." There is nothing in the file to substantiate the prediction of the Overseer that registrant "will be devoting at least 100 hours per month to actual preaching," which is the minimum standard for a IV–D exemption under the position of registrant's own church.[7] In fact, the following information submitted by the registrant negatives the majority opinion assumption that he spent at any time in 1966 100 hours per month in the "field ministry."[8]

There was enclosed with registrant's letter of October 3, 1966, which made the claim that he was entitled to be classified as a minister (IV–D) un-

3. In Senate Report No. 1268, 80th Cong., 2d Sess. 13 (1948), this language was used:

> In order that there may be no misunderstanding of the fact that the exemption granted is a narrow one, intended for the leaders of the various religious faiths and not for the members generally, the terms "regular or duly ordained ministers of religion" have been defined in section 16(g). U.S.Code Cong.Serv. 1948, p. 2001.

4. During the hearing, the defendant also testified that he had part-time employment.

5. Registrant's 23rd birthday was on June 3, 1966. See note 1, *supra.* It is noted

that the trial judge commented at N.T. 54 (Doc. 20): "I have never reviewed a more confusing file."

6. There is every reason to believe that the Selective Service authorities understood the Jehovah's Witnesses include in time spent preaching so-called "sermons" delivered in the homes presented in the door-to-door ministry (N.T. 132–33, 141, 191, 193). However, it seems clear that Congress did not contemplate such door-to-door coverage of an assigned territory as "preaching," within 50 U.S.C.App. § 456 (g). *See* notes 2 & 3, *supra.*

7. *See* United States v. Stidham, 248 F. Supp. 822, 839 n. 9 (W.D.Mo.1965).

8. *See* note 1 of opinion.

der 50 U.S.C. App. § 466(g), a 2½ sheet "summary I would like to add to my testimony." This described on the first page his "itemized and extensive training for the ministry," including "the delivery of bible sermons" and "public speaking," apparently as part of this training. On the second page it stated that his "vocation * * * not only covers actual time preaching but time spent pursuing all my ministerial activities," which he listed under six headings, as follows:

1. Text in morning.

2. Time missionary work among my congregation of laymen.

3. Time spent calling on each of my congregation (spiritual, physical as well as with associate ministers of local congregation of Jehovah Witnesses).

4. Time for preparing for local congregation meetings.

5. Time attending, officiating at or participating in local congregation meeting (see service program).

6. Time counseling and aiding visitors or associates within local congregation of Jehovah's Witnesses before and after meeting.

A fourth sheet described "as a final word" included this language:

* * * since the overall time spent in pursuit of ministerial vocation can be determined by my field service record and general curriculum. I offer in evidence thereto the following information to be added to my file. * * *

The "following information" apparently referred to four sheets of paper on which were typed at the top: "My ministerial activity for the month of Apr[9] in behalf of my congregation." Under this was a form entitled "Publisher's Weekly Field Service Report. * * * " with seven headings to show a figure for each day of the week in each of the seven categories. The total weekly time varied from three to five under "Hours of Field Service," and unexplained numbers from 18 to 24 appeared under "Individual Magazines." Even assuming five-week months and that the documents referred to a week, rather than a month as indicated at the top of the sheet, far less than 100 hours per month was spent on field service. The most reasonable conclusion from the file is that registrant was devoting far less than 100 hours per month to the "field ministry," which, as stated in footnote 1 of the majority opinion, is "the minimum standard for a IV–D exemption" for a Pioneer under the position of registrant's own church. *See* United States v. Stidham, 248 F.Supp. 822, 839 n. 9 (W.D.Mo.1965). Hence, the majority's assumption that registrant had "newly acquired pioneer status" is conclusively rebutted by registrant's own evidence.

As stated in McCoy v. United States, 403 F.2d 896, 902 n. 6 (5th Cir. 1968):

Here the file affirmatively showed that appellant * * * did not have the recognized standing of a minister or leader of lesser members of his congregation sufficient in his own sect (the Watchtower Society) to justify the IV–D ministerial exemption, and the extent of his activities was largely unsupported and conflicting.

In order to obtain an exemption, a registrant must stand in the relation of a minister to a congregation. He must be a leader of a group of lesser members of his faith.[10] Fitts v. United States, 334

---

9. The words "May," "June" and "July" (apparently 1966—see N.T. 131) appeared in place of "Apr" on the other three sheets.

10. Recognizing that it is the function of the Local Board to consider the evidence submitted by the registrant at the administrative stage of the proceedings in support of his claim for exemption as a minister, my examination of the evidence at defendant's trial (during which alleged procedural unfairness of the Selective Service System in considering his IV-D

F.2d 416, 421 (5th Cir. 1964). *See* Robertson v. United States, 417 F.2d 440 (5th Cir. 1969); Sturgis v. United States, 342 F.2d 328 (3d Cir. 1965). The evidence placed in the file by the registrant demonstrated that he did not have such standing.

For the foregoing reasons, I respectfully dissent from the majority opinion and its conclusion. I believe that there was a basis in fact for the denial of the defendant's conscientious objector claim, but I would remand to the district court in order to permit the examination of the subpoenaed Chairman of the Local Board and any witnesses called by the Government on this issue raised by the registrant: [11] Was the Local Board or its Chairman biased and prejudiced against Jehovah's Witnesses and/or the registrant? [12]

Circuit Judge ALDISERT joins in the foregoing opinion and adds the following additional dissenting opinion, with which I agree.

ALDISERT, Circuit Judge (dissenting).

While I join in the dissenting opinion of Judge VAN DUSEN, I add that I am not persuaded that Regulation 1626.23 requires the appeal board to do what Regulation 1625.2 requires the registrant to do, namely, to present "written

information presenting facts not considered when the registrant was classified" to the local board. As I read Regulation 1626.23 the appeal board is required to return the record to the local board only (1) if steps have been omitted by the local board, (2) if the record is incomplete before the appeal board, or (3) if the information is not sufficient to enable the appeal board to determine the classification of the registrant. I do not see any of these circumstances present in the case at bar. Circuit Judge VAN DUSEN joins in this expression.

claim was an issue), including his own articulate testimony (Doc. 20), indicates that he was not entitled to the IV-D exemption as 50 U.S.C.App. §§ 456(g) and 466(g) have been construed by the foregoing authorities as a matter of law. Cf. United States v. Thompson, 431 F.2d 1265 (3d Cir. 1970), where this court said at p. 1272:

> The current rule in this circuit requires proof of prejudice to substantiate a claim that "denial of basic procedural fairness" in the selective service process invalidates a subsequent conviction for refusal to submit to induction.

I dissent from any possible implication at pages 1319–1320 of the majority opinion that the above-quoted language is being overruled.

11. See Greenwell v. United States, 115 U.S.App.D.C. 44, 317 F.2d 108, 111

(1963); United States ex rel. Kulick v. Kennedy, 157 F.2d 811, 814 (2d Cir. 1964).

12. The remand order would include these provisions: (1) In the event that the District Court makes an affirmative answer to this question, a finding of not guilty shall be entered and the judgment of May 28, 1969, vacated. In the absence of such answer, an appropriate final order shall be entered. (2) The determinations of the District Court will be appealable to this court as in other criminal cases.

I agree with the view that "the mental processes" used by the Local Board members in reaching their decisions may not be probed. See Clay v. United States, 397 F.2d 901, 915 (5th Cir. 1968).