**UNITED STATES of America,
Appellee,**

v.

**George Llewellyn JONES, III, Appellant.**

**No. 71–1251.**

United States Court of Appeals,
Third Circuit.

Argued Oct. 4, 1971.

Decided Feb. 4, 1972.

Ganey, Circuit Judge, concurred and filed opinion.

Adams, Circuit Judge, dissented and filed opinion.

Thomas M. Kerr, Pittsburgh, Pa., for appellant.

Katherine Kelly Curtin, Asst. U. S. Atty., Pittsburgh, Pa. (Richard L. Thornburgh, U. S. Atty., Blair A. Griffith, First Asst. U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, GANEY and ADAMS, Circuit Judges.

OPINION OF THE COURT

GERALD McLAUGHLIN, Circuit Judge.

Appellant was convicted of refusing to submit to induction into the Armed Services of the United States and now appeals from that conviction. He registered for the draft with his local board in August 1964 at which time he was eighteen years old, He was classified I–A. In the fall of 1964 he matriculated at Denison University. Because of that he was reclassified as 2–S. In February 1968, as his final year at Denison was drawing to a close, appellant sought admission to the Officer Candidate School of the United States Navy. He was instructed that should he be accepted he would possibly be enlisted in the Naval Reserve within sixty to ninety days to await active duty for a period of three years. On May 1, 1968 his local board was notified that he had not been accepted for the said school. He graduated from Denison in June 1968 and in due course was reclassified as I–A. He ap-

pealed from that decision, asserting that he was a full time graduate student. The appeal was denied and on November 21, 1968, he was found acceptable for military service. On that day he requested and received a conscientious objector #150 form from his local board. On December 20, 1968 he filed his completed #150 form with said board and asked for a personal appearance which he was given. In a unanimous decision the board voted that his I–A classification be retained.

He then appealed to the appeal board which affirmed his I–A classification and ordered him to report for induction on September 17, 1969. He appeared at the induction center but refused induction. He was thereafter indicted, tried and convicted of having refused induction into the Armed Services.

He offers two contentions on appeal. The first of these is that the "Selective Service System gave no reasons for its rejection of the claim." The completely dispositive difficulty with that argument on behalf of appellant is that there was no prima facie case presented for him, nothing that could justify his classification as a conscientious objector. The burden admittedly was on appellant to produce evidence that would support such classification change. United States v. Palmer, 223 F.2d 893 (3rd Cir. 1955), cert. den. 350 U.S. 873, 76 S.Ct. 116, 100 L.Ed. 772, United States v. Carroll, 398 F.2d 651, 653 (3rd Cir. 1968). Appellant and his attorney cannot claim ignorance of the present pertinent law of this circuit. They know that in Scott v. Commanding Officer, 431 F.2d 1132 (3rd Cir. 1970) this court adopted the rule of United States v. Broyles, 423 F.2d 1299, 1304 (4th Cir. 1970) which holds that *"Where it is clear that a prima facie case was established,* we conclude that in conscientious objector cases, it is essential to the validity of an order to report that the board state its basis of decision and the reasons therefor, i. e., whether it has found the registrant incredible, or insincere, or of bad faith and why." (Emphasis supplied). In the latest ruling of

this court on the question before us, United States v. Stephens, 445 F.2d 192 (opinion filed July 2, 1971), the majority opinion in outlining the issue before the court said: "We turn, therefore, to the sole question for resolution: *whether, as required by Scott, appellant presented a prima facie case to the local board."* (Emphasis supplied). The concurrence agreed with this but differed from the majority conclusion that a prima facie situation had been established. We note in passing that the definition of a prima facie case in Selective Service litigation as spelled out in United States v. Burlich, 257 F.Supp. 906, 911 (S.D.N.Y.1966) quoted in the Stephens concurrence, was not disputed nor do we find any reported decision to the contrary. That quotation is as follows:

> "In selective service cases, a *prima facie* case is present 'if a registrant has presented *facts* which, if true and uncontradicted by other information contained in his file, would be sufficient under the regulations to warrant granting his requested classification.' "

Appellant's brief in its statement on this first point for review merely makes the flat pronouncement that here, in a case involving a *prima facie conscientious objector's claim* " . . . the Selective Service System gives no reasons for its rejection of the claim." On the argument in the brief, again appears the language that "Where the Selective Service System gives no reason for its rejection of a *prima facie conscientious claim* . . . ." (Emphasis supplied.) In United States v. Crownfield, 3rd Cir. opinion filed March 19, 1971, 439 F.2d 839, which is in exact accord with Scott and Stephens, *it was conceded* that defendant had made out a prima facie case.

■ Let us examine the record and ascertain whether appellant made out a prima facie case for his alleged conscientious objector status. It is settled law that he must satisfy three basic tests. "He must show that he is conscientious-

ly opposed to war *in any form.* . . . And he must show that his opposition is based upon religious training and belief. . . . And he must show his objection is sincere." (Emphasis supplied). Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810, opinion filed June 29, 1971. See also Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L. Ed. 428 (1955).

■ Jones, after he had been initially classified I–A, as has been mentioned above, obtained a full college student deferment by matriculating at Denison University. In February 1968 as his senior year was running out he applied for Officer Candidate School, United States Navy. Down to May 1, 1968, he did not withdraw his application. On that date he was advised that he had not been selected. The following November 21, 1968 he was found acceptable for the Armed Services. On that same date he requested C.O. Form # 150. He filled out and filed that form December 20, 1968. In that questionnaire Jones said he was "conscientiously opposed to participation in war in any form." Answering the religious belief question he stated that "By the time of completion of the undergraduate degree (June 1968) I had formed the belief mentioned above." He also said "these beliefs have been established for a few years now." It will be remembered that Jones had an application for the Navy Officer's Candidate school going from at least February 1968 to May 1, 1968. There is no evidence that he ever did withdraw it.

On February 20, 1969 Jones made a personal appearance with the local board. In the summary of information furnished by him is the following, "Registrant had applied for Officer Candidate School and would have entered if accepted at that time but not now." On March 17, 1969 Jones sent a letter in connection with his appeal to the board. He there said "By the time I came to realize that participation in any branch of the military would be participation *in the war.*" (Emphasis supplied). He went on to say "I cannot participate in an aggressive war." Jones was a trial witness in his own behalf. He was asked by his attorney, "When your views did crystallize, did you feel that you were sincerely and conscientiously opposed to taking part in war as you described your views here?" Answer "Yes."

"The Court: Doesn't that conflict with your previous testimony?

Mr. Kerr: Well, I think he has testified here, and he has been frank, Your Honor to say that he is not opposed to war in any form. (Mr. Kerr, attorney for appellant).

The Court: It seems to me what he has been outlining is his thinking that he is opposed to this particular conflict in principle.

Mr. Kerr: I think we have heard a clear—

The Court: It doesn't make him a conscientious objector, Mr. Kerr.

Mr. Kerr: That depends Your Honor on the interpretation of the statute which is a live matter with respect to the appellate courts.

Mr. Griffith (Attorney for the United States): *Is he saying that he finally crystallized his views and is opposed to this particular war?*

Mr. Kerr: *Yes.*

Mr. Griffith: *That is what his belief is?*

Mr. Kerr: *Yes.*

The Court: *He earlier stated that.*

Mr. Kerr: *That is right. That is in the record already.*" (Emphasis supplied).

On the above first point it is crystal clear that appellant did not make out a prima facie case on any of the three required basic tests of conscientious objection. United States v. McKinley, 447 F.2d 962, 963 (9th Cir. Aug. 23, 1971) is on all fours with the case at bar. In

a similar situation, that court held that "We are compelled to find there was no duty to reopen in light of the information communicated by appellant which fell far short of establishing, if true, a prima facie claim." In United States v. Neamand, 452 F.2d 25 (3rd Cir. Nov. 16, 1971), the appellant testified at his trial, as set out in the opinion, that his views had culminated "in an abhorrence of all war." That contention is the exact opposite of appellant's position in this appeal which is that he is opposed solely to the Vietnam war.

 The remaining point urged on behalf of appellant is the denial of counsel to appellant on his personal appearance before the local board. That practice is in strict accordance with the settled law, found at 32 C.F.R. Section 1624.1(b). United States v. Pitt, 144 F.2d 169, 172 (3rd Cir. 1944); United States v. Sturgis, 342 F.2d 328 (3rd Cir. 1965), cert. den. 1965. See also Camp v. United States, 413 F.2d 419 (5th Cir. 1969); Nickerson v. United States, 391 F.2d 760 (10th Cir. 1968); United States v. Dicks, 392 F.2d 524 (4th Cir. 1968); Imboden v. United States, 194 F.2d 508 (6th Cir. 1944), cert. denied 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 1357; United States v. Gilmore, 295 F. Supp. 684, 690 (E.D.N.Y.1969). The point is plainly frivolous.

The judgment of the district court will be affirmed.

GANEY, Circuit Judge (concurring).

I wish to add that it was no mere coincidence that the appellant applied for Conscientious Objector Form 150 on the same day that he was declared fit for military service by the board on November 21, 1968. His statement that his conscientious objector status had been crystallized "for a few years now" is directly contradicted by his application for officer's training status some six months earlier. This, coupled with the final conclusion in his supplementary letter to the board, "I cannot participate in an aggressive war", in my judgment, were

most valid reasons for confirming the board's position that he had produced no substantial or material evidence of a change in status and that his contentions were insincere. On this record, the expertise of the board in passing judgment on this application should be sustained without setting forth any reason for its decision.

ADAMS, Circuit Judge (dissenting).

Although this is admittedly a close case, I am of the belief that the information contained in the SSS Form 150 submitted by Jones to his local board, when considered with his supplemental letter, was sufficient to constitute a *prima facie* claim of conscientious objection under 50 U.S.C. App. § 456(j). Accordingly, I am constrained to dissent.

In Scott v. Commanding Officer, 431 F.2d 1132 (3rd Cir. 1970), this Court held that when a local board is presented with a *prima facie* case of conscientious objection, it must re-open the registrant's classification unless it gives its reasons for not doing so. The rationale for this rule is manifest. The federal courts have a very narrow scope of review of local board actions—in general, being limited to a determination whether there exists a basis in fact for the refusal of the local board to classify the registrant as he requested. *See* 50 U.S. C. App. § 460(b) (3); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). Were a board not required to state its reasons when faced with *prima facie* papers for classification to a different category, a court would be impelled to embark on a fishing expedition to ascertain the basis, thereby reducing even further its already limited scope of effective review. *See* United States v. Neamand, 452 F.2d 25, at 30 (3rd Cir., No. 71–1252, Nov. 16, 1971); United States v. Stephens, 445 F.2d 192 (3rd Cir. 1971); United States v. Crownfield, 439 F.2d 839 (3rd Cir. 1971).

Scott has been interpreted as requiring a statement of reasons by the draft board to support a denial of a conscientious objector claim when a *prima*

*facie* case is submitted. In the absence of such a statement, a subsequent induction order is not valid. United States v. Stephens, *supra,* United States v. Crownfield, *supra,* United States v. Speicher, 439 F.2d 104 (3rd Cir. 1971). It is significant in this regard that the Congress, in the Draft Extension Act, Pub.L. 92–129 (1971), recognized the importance of the local board's issuing a statement of reasons when it denies a claim, by requiring it, when requested by the registrant, to state reasons. Because *Scott* is retroactive under United States v. Speicher, *supra,* its holding must be applied to this direct appeal from a criminal conviction even though all the proceedings before the local board had concluded prior to the date of the *Scott* decision.

It is clear that an indictment for violation of 50 U.S.C. App. § 462 is based on the registrant's response to local board action—the order to report for induction—occurring prior to trial. When the defendant challenges the validity of the indictment, it follows that if the local board action were invalid, the indictment should be dismissed. If a trial is nonetheless held the evidence adduced there cannot cure the defect. As was stated in United States v. Brown, 436 F.2d 1317, 1319 (3rd Cir. 1971) *(en banc):*

> "[W]e do not believe that appellant was required to prove a sufficient case for IV–D classification during his criminal prosecution. The determination whether appellant was entitled to a ministerial exemption was to be made initially by the Selective Service System acting in compliance with its own regulations—not by the district court in a criminal prosecution."

See United States v. Stephens, *supra,* 445 F.2d at 197; United States v. Speicher, *supra,* at 439 F.2d 108–109. We there-fore should be limited in our consideration of the validity of Jones' indictment and the underlying local board order to the contents of Jones' Selective Service file—the relevant portions being his Form 150 and supplemental letter.[1]

Section 6(j) of the Selective Service Act of 1967, 50 U.S.C. App. § 456(j), exempts from combatant military training and service any person "who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form." An individual desiring classification as a C.O. must meet three basic tests: (1) He must be opposed to secular war in any form, Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955); (2) His opposition to war must be founded on traditional religious beliefs or on a personally developed belief which occupies the same place in his life as the beliefs of a member of a recognized religion, Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); and (3) He must be sincere, Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).[1a] Therefore, when a registrant presents evidence to the local board which, if true and uncontradicted, would satisfy the specified criteria, he has established a *prima facie* case of conscientious objection. *See* Mulloy v. United States, 398 U.S. 410, 416–417, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970); United States v. Neamand, *supra,* 452 F.2d at 28, n. 3; United States v. Stephens, *supra,* 445 F.2d at 197–98 (Aldisert, J., concurring); United States v. Burlich, 257 F.Supp. 906, 911 (S.D.N.Y.1966). with this proposition, the majority and I do not disagree. Rather, we differ on the import of the statements contained in the papers submitted by Jones to his local board.

---

1. We are so limited because the record gives us no indication of what transpired at Jones' personal appearance. Of course, one reason for this lack of information is the Board's failure to state its reasons for denying the C.O. claim.

1a. Clay v. United States, 403 U.S. 698, 700, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971) sets forth these guidelines.

One additional point requires discussion prior to undertaking an analysis of the application for conscientious objector status. Jones, although a college graduate, is not a lawyer. Neither the local ·board nor a federal court should expect him to be fully versed in the law or the use of its special language. Therefore, an inarticulate expression of a view necessary to establish a *prima facie* case should not be sufficient in itself to defeat an otherwise valid claim.

> "Few would quarrel, we think, with the proposition that in no field of human endeavor has the tool of language proved so inadequate in the communication of ideas as it has in dealing with the fundamental questions of man's predicament in life, in death or in final judgment and retribution."[2]

The strict standards applied to pleadings in an adversary action have no place when either the local board or a court considers documents submitted by a non-lawyer in what is essentially a non-adversary proceeding.[3] In fact, this Court has held that in evaluating such written documents submitted by a registrant to his local board, we "should [consider] not only the materials themselves, but also the legitimate connective inferences which could fairly and plainly [be] drawn therefrom." United States v. Stephens, *supra*, 445 F.2d at 195.

Applying the above rule of construction, Jones did meet his burden of establishing a *prima facie* case. Notwithstanding the portion of the trial transcript referred to by the majority[4], Jones' Form 150 met the first of the three tests specified above by making reasonably clear that he is opposed to war in any form.[4a] In response to Question 1 of Series II of the Form 150, Jones states, "The use of force is capable of subduing but never of gaining, and is destructive in every form . . . The immorality of war and my belief in its inadequacies are cause enough to make it impossible for me to participate in or reinforce any such actions." He additionally wrote, when answering Question 2, "These beliefs do not allow me to participate in any manner in the Armed Forces of this nation or any other." Although Jones never parrots the phrase, the obvious inference to be drawn from these words is that Jones is opposed to "participation in war in any form." Although the majority finds that Jones was opposed only to the war in Vietnam, after a careful reading of his Form 150 and supplemental letter, I can find no such selective opposition. This factual dispute serves to highlight the difficulty encountered when we attempt to decide a draft case when the local board has not stated its reasons for denying a claim for conscientious objector status. As a court of appeals, we should not be required to act as finders of fact. Rather, it is our duty to apply the law to a given set of facts, a task which we cannot properly accomplish without a statement of reasons.

That Jones' opposition to war was based on religious training and belief within the meaning of Welsh v. United

---

2. United States v. Seeger, 380 U.S. 163, 174, 85 S.Ct. 850, 858, 13 L.Ed.2d 733 (1965).

3. Selective Service Regulations do not permit counsel to be present during the registrant's personal appearance, 32 C.F.R. § 1624.1(b). *See* United States v. Sturgis, 342 F.2d 328, 332 (3rd Cir. 1965).

4. Even though, in a colloquy with the District Court, Jones lawyer stated that he considered Jones to be a selective conscientious objector, Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28

L.Ed.2d 168 (1971), the holding of United States v. Brown, *supra*, makes any such statement at trial irrelevant for the purposes of this decision.

4a. While there might have been some information in the file on which the board could have relied to deny the claim, when faced with an otherwise prima facie case, the board is required to state its reasons for the denial. See text *supra* at 1–2. Logic would indicate that a statement of opposition to aggressive war is not inconsistent with opposition to war in any form—a view made clear by the remainder of Jones' Form 150.

States, *supra* and thus met the second criterion is equally apparent. Jones' parents and their families are "highly religious people." From his childhood until age eighteen, he regularly attended church. When he went away to college, he began to develop his own religious views. Jones stated that he recognized "some form of supreme being [which], as of yet has not been clearly defined." His opposition to war in any form appears to be based on his religion, and it can be readily inferred from his statement that his religion occupies the place in his life necessary to satisfy the test of *Welsh*.

Doubt as to Jones' sincerity—the third prong—seems to be the true basis, however, for the majority's holding that he failed to make out a *prima facie* case. Jones had been a member of Air Force ROTC during his freshman year at college—five years prior to the filing of his Form 150—but he resigned when he "found the program incompatible with [his] general way of life." He added that, "This represented my first experience with the military philosophies. My reasons for not continuing with the program were not the same as those which I presently hold in opposition to war, for at the time I really had had no cause or opportunity to develop such a belief." Jones' views had not begun to crystallize when he was a freshman, and this fact should not operate to cast doubt on his sincerity. *See* Scott v. Commanding Officer, *supra,* 431 F.2d at 1136.

More troublesome, however, is the effect of Jones' application to Naval Officer Candidate School [O.C.S.] in February, 1968. He stated in his Form 150 that "these beliefs have been established for a few years now." Reading this phrase out of context,[5] as I respectfully submit the majority does, it might be tempting to conclude that Jones' views had crystallized prior to his applying for a commission in the Navy. In addition, reliance is placed on Jones' statement that as

late as May, 1968—when his application to O.C.S. was rejected—he "probably would have refused [the commission] anyway." Thus, reasons the majority, although Jones claimed to be a conscientious objector to February, 1968, he could not have been sincere because after his views crystallized he applied for a commission in the Armed Forces.

The Supreme Court in Witmer v. United States, *supra,* dealt with a sincerity question similar to that posed by the majority here. The facts of *Witmer,* however, are clearly distinguishable from this case. In *Witmer,* the registrant stated that he desired classification as an agricultural worker based on an assertion that, " 'I will increase production year after year, and contribute a satisfactory amount for the war effort and civilian use.' " *Id.* 348 U.S. 378, 75 S.Ct. 394. He also stated, in the same questionnaire, that he was a conscientious objector. At an interview regarding his C.O. claim, Witmer stated that " 'the boy who makes the snow balls is just as responsible as the boy who throws them.' " *Id.* 380, 75 S.Ct. 395. Thus, Witmer's file contained an inescapable contradiction—that one who was willing to stay home to help the war also objected to war in any form. This inconsistency "cast considerable doubt on the sincerity of [his] claim." *Id.* 383, 75 S.Ct. 396, and his conviction was therefore affirmed.

Had Jones stated that for several years prior to the filing of his C.O. application, he was completely opposed to war in any form, we might have a case analogous to *Witmer.* Instead, Jones wrote that "certain of his beliefs" had been held for a number of years. A careful reading of Jones' Form 150 shows that the belief to which he refers is "that the use of force when dealing with others is wrong." This belief is not required in order to qualify as a conscientious objector. Thus, Jones did not state that he had been a C.O. at the time he applied to O.C.S.

---

5. After reading Jones' entire selective service file, it becomes clear that he did not intend to convey the meaning which the majority draws from this statement. See discussion *infra*, text at n. 6.

Instead, Jones stated that the application to O.C.S. was a test of his developing C.O. attitude. During his senior year at college, he "held only a 'gut reaction' against participation in war." By the time Jones presented his Form 150 to the local board, he asserted, "[T]he beliefs I hold at present are *now* my true beliefs. . . . " (Emphasis added.)

The conclusion which must be drawn from these statements is that Jones' C.O. views were beginning to crystallize during his years at college and finally did so when he applied for the I–O classification. Although his application to O.C.S. might cast some doubt on his sincerity, it is nonetheless also consistent with the view that he had not yet crystallized his C.O. feeling and therefore does not amount to the clear contradiction found in *Witmer*. Absent such a contradiction, there is nothing in the papers which Jones filed to demonstrate that he was other than sincere.[6]

Because Jones, in his Form 150 and supplemental letter, has carried his burden of establishing a *prima facie* case, and the local board did not state its reasons for denying him I–O classification, I would reverse Jones' conviction and dismiss the indictment. United States v. Neamand, *supra*; United States v. Stephens, *supra*; United States v. Speicher, *supra*; United States v. Crownfield, *supra*; Scott v. Commanding Officer, *supra*. Such a result neither would declare Jones to be a C.O. nor would it relieve him of his obligation to his country. Rather Jones would still be in a I–A status with an application for a I–O classification pending. His local board would then have the responsibility of interviewing him again to determine the validity of his C.O. claim. If it found him to be entitled to I–O status, Jones would be required to perform two years of alternate service. If the local Board denied his claim, it would state its reasons [7] and reprocess Jones for induction.

---

6. While the local board might have had good reason for denying his application beyond Jones' views as expressed on paper, their failure to state reasons precludes us from speculating as to possible bases for the denial.

7. New Selective Service Regulations enacted pursuant to § 22 of the Draft Extension Act, Pub.L. 92–129 (1971), require a statement of reasons from the local board when its decision is adverse to the claim of the registrant. 32 C.F.R. § 1625.4.