**UNITED STATES of America,**
**Appellee,**

v.

**George Llewellyn JONES, III, Appellant.**

**No. 71–1251.**

United States Court of Appeals,
Third Circuit.

Submitted Aug. 26, 1972.

Decided Oct. 24, 1972.

## OPINION ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

ADAMS, Circuit Judge.

This controversy is here once again,[1] this time on remand from the United States Supreme Court where the Solicitor General, in a memorandum, confessed error and urged vacation of this Court's judgment and reversal of appellant's conviction. Under these circumstances, we reverse the conviction without prejudice to the Selective Service System's reprocessing of appellant.

Appellant was convicted of willful refusal to submit to induction, in violation of 50 U.S.C. App. § 462(a). He registered with his local draft board in August 1964 and was classified I–A. In October, 1964, upon matriculation at college, he was reclassified II–S. After graduation from college in 1968, he received a I–A classification. On November 21, 1968, after a pre-induction physical examination, appellant was found acceptable for military service. On that day he requested a conscientious objector Form 150 which he returned completed on December 20, 1968. In the form, appellant made detailed statements about his beliefs, but submitted no letters in support of his application for C. O. status.[2] He requested a personal appearance to discuss his claim with the board members; the request was granted. After appellant's appearance on February 2, 1969, the local board voted unanimously not to reopen his classification. No reasons were given for its action. He was informed of the board's decision and advised of his right to an administrative appeal.

On March 11, 1969, appellant informed the local board of his intention to appeal. A number of letters were submitted to the local board attesting to his sincerity.[3] Jones also filed with his

---

Before McLAUGHLIN, VAN DUSEN and ADAMS, Circuit Judges.

---

1. See United States v. Jones, 456 F.2d 627 (3d Cir., filed Feb. 4, 1972).

2. In his Form 150, Jones stated that although friends had offered to write letters in his behalf, he had rejected their offers since "they are [not] fully aware of my true feelings. . . . If it is necessary, I will ask these people to write references concerning my sincerity only."

3. See fn. 2, supra.

notice of appeal a supplementary statement explaining in detail the crystallization of his objector beliefs.[4] These letters and appellant's supplemental statement were included in his Selective Service file which was then forwarded to the State Appeal Board. On July 25, 1969, the Appeal Board voted unanimously to retain appellant in Class I–A. It gave no reasons in support of its decision. On August 20, 1969, appellant was ordered to report for induction. When the time for induction came, he refused to take the symbolic step forward. After a non-jury trial in the district court, Jones was convicted, and this Court affirmed in a 2–1 decision.

Jones then sought a writ of certiorari from the Supreme Court within the time period provided by the rules. The Solicitor General submitted a memorandum to that Court in which he stated that "petitioner had satisfied the *prima facie* requirement," and that "the failure of [the State Appeal Board] to state reasons for its classification decision was sufficiently prejudicial to invalidate the induction order." The Solicitor General concluded that "the judgment of the court of appeals should be vacated and the judgment of conviction should be reversed." The Supreme Court, in an order dated June 19, 1972, vacated the judgment and remanded the case to this court "for reconsideration in light of the position presently asserted by the Government."

■■■ A careful review of the record clearly indicates that the information contained in Jones' Selective Service file, including his supplemental letter, forwarded by the local board to the Appeal Board constitutes a *prima facie* claim of conscientious objection under 50 U.S.C. App. § 456(j).[5] Because a *prima facie* case was presented at least to the Appeal Board,[6] that body was obliged, in rejecting his claim, to state reasons for its denial. In the absence of such a statement of reasons by an appeal board, despite the existence of a *prima facie* case, a subsequent induction order is invalid.[7] This Court can no more exercise effective review over an appeal board decision failing to state reasons than it can over such determina-

4. Under 32 C.F.R. § 1626.12 such a statement may be filed with the appeal. An appeal board, though restricted to reviewing information "contained in the record received from the local board," 32 C.F.R. § 1626.24(b)(1), may consider the registrant's written statement. *See* United States v. Speicher, 439 F.2d 104, 107 (3d Cir. 1971). An appeal board examines a registrant's claim *de novo*. *See* fn. 8, *infra*.

5. The dissent heavily relies on trial testimony in attempting to establish that Jones did not present a *prima facie* case before the Appeal Board. However, because an indictment for violation of 50 U.S.C.App. § 462 is necessarily based upon the registrant's response to local board action occurring *before* trial—the order to report for induction—determining whether a challenged indictment should be dismissed must logically depend solely on the validity of the board's action. Any evidence later adduced at trial cannot cure the defect. *See* United States v. Brown, 436 F.2d 1317, 1319 (3d Cir. 1971) (*en banc*). Here, the Selective Service file reveals only that Jones' opposition is to war in any form. The record gives no indication of what transpired during Jones' personal appearance before the local board, and since the Appeal Board did not discuss the conscientious objection claim with Jones, its decision could not have been based on any statements made at trial. Under these circumstances, consideration of the validity of the indictment and the underlying local board order must be limited to the contents of Jones' Selective Service file, which included the supplemental letter relied upon by the Solicitor General, but not referred to in the dissenting opinion. *See* fn. 5, *infra*.

6. In his memorandum submitted to the Supreme Court, the Solicitor General conceded that appellant "had satisfied the *prima facie* requirement," before the Appeal Board.

7. *Cf.* United States v. Ziskowski, 465 F.2d 480 (3d Cir. 1972); United States v. Stephens, 445 F.2d 192 (3d Cir. 1971); United States v. Crownfield, 439 F.2d 839 (3d Cir. 1971); United States v. Speicher, 439 F.2d 104 (3d Cir. 1971).

tions by local boards.[8] For this reason, Appeal Boards, as well as local boards,[9] must state reasons for a denial of a request for conscientious objector status when a *prima facie* case is presented.

Moreover, any disposition by this Court other than a reversal of Jones' conviction would offend the letter as well as the spirit of the rule recently enunciated in Cale v. Volatile, 465 F.2d 1110 (3d Cir., filed Sept. 7, 1972). In that case, the Government took a position different from that which it had taken in another case. In an opinion by Judge Aldisert, this Court said: "If this was the position taken by the government in confessing error in *Joseph*, a selective service case emanating from this circuit, . . . basic maxims of equality of justice compel us to require the government to maintain a consistent position in the case at bar."

Here, the Government has confessed error before the Supreme Court, in this *very same case*. Under these circumstances, stronger than those prompting the Court in *Cale* to require the Government to maintain consistent positions, appellee will not be heard to suggest that other than a *prima facie* case was presented to the Appeal Board and that, therefore, that body was not obliged to state reasons for its denial of appellant's claim.

In view of the above, the judgment of convictions will be reversed. However, such reversal does not declare Jones to be a conscientious objector, nor does it relieve him of his obligation to the country. Instead, Jones is still in I–A status with an application for a I–O classification pending. His local board now has the responsibility, if it chooses to reprocess Jones, of interviewing him again to determine the validity of his C.O. claim. If found to be entitled to I–O status, Jones will be required to perform two years of alternate service. If the local Board denies his claim, it will state its reasons and reprocess Jones for induction.[10]

It is often tempting in cases of this kind to read into the law one's own private notions of policy. This, however, we are not justified in doing, no matter how deep the feeling about these notions, and no matter how mischievous we deem their disregard. The task of a judge is not that of an ordinary citizen. To discharge his duty properly, he must frequently suppress his personal views, and be ever mindful that in the final analysis, the only check upon the exercise of judicial power is a sense of self-restraint.

GERALD McLAUGHLIN, Circuit Judge (dissenting).

The current court opinion here while in the essence of good faith, counte-

8. *See* United States v. Speicher, 439 F.2d 104 (3d Cir. 1971), in which this Court said: "The theory, apparently, is that judicial review of two administrative agency actions unsupported by reasons is somehow less futile than judicial review of one such action. We think not." *Id.* at 107. *Cf.* Joseph v. United States, 405 U.S. 1006, 1012 n. 3, 92 S.Ct. 1274, 31 L.Ed.2d 473 (1972) (summary disposition) (Douglas, J. dissenting).

9. Appeal Boards do not, in fact, exercise the typical powers of review. Instead, they decide cases *de novo, see* United States v. Speicher, 439 F.2d 104, 107 (3d Cir. 1971), and have the power to reclassify. 32 C.F.R. § 1626.26. "It is universally held that the Appeal Board considers matters of classification *de novo* and its classification is one of first in-

stance, not a mere affirmance or reversal of the Local Board. . . ." DeRemer v. United States, 340 F.2d 712, 719 (8th Cir. 1965). See McGee v. United States, 402 U.S. 479, 489, 490, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971), affg. 426 F.2d 691, 699 (2d Cir. 1970). Under these circumstances, the principle requiring the local board to state reasons when denying a *prima facie* claim for conscientious objector status must apply to decisions by the Appeal Board as well.

10. Under the new Selective Service Regulations enacted pursuant to § 22 of the Draft Extension Act, Pub.L. 92–129 (1971), 85 Stat. 353, the local board must state reasons for any decision adverse to the claim of the registrant. 32 C.F.R. § 1625.4.

nances the miscarriage of justice which came about by the mistaken view of the attorney for the plaintiff before the Supreme Court to the effect that a prima facie case of conscientious objection had been made out by appellant. All of the reported case law on the subject is to the contrary. See our earlier opinion in this suit, 456 F.2d 627 (1972) which spread out for all to see that appellant never did present and never in reality claimed to have made a legitimate conscientious objector prima facie statement. He, his lawyers, and all of the courts which had to pass upon the various maneuvers to keep appellant from being inducted into the armed forces of the United States, know that in Selective Service, a prima facie position has been developed "if a registrant has presented facts which, if true and uncontradicted by other information contained in his file, would be sufficient under the regulations to warrant granting his requested classification." United States v. Burlich, 257 F.Supp. 906, 911 (S.D.N.Y. 1966).

No such prima facie situation was ever indicated by Jones or his attorneys. They have all known that at the very least "He must show that he is conscientiously opposed to war in any form." See all of the United States Courts' opinions on that subject to date. The most that his attorney could obtain from Jones was *"I cannot* participate in an aggressive war." (Emphasis supplied.) His lawyer addressed the trial judge as to that evidence under oath by Jones. The lawyer stated to the court "Well I think he has been frank Your Honor to say that *he is not opposed to war in any form*." (Emphasis supplied.) The defense lawyer was asked by the United States Attorney "Is he (Jones) saying he has finally crystallized his views and is opposed to this particular war?" The lawyer answered "Yes". The District Attorney questioned the defense lawyer "That is what his belief is?"

The defense lawyer answered "Yes." The trial judge said "He (Jones) earlier stated that." The defense attorney said "That is right. *That is in the record already*." (Emphasis supplied.)

There is no reported decision in Selective Service litigation on that particular issue that countenances the kind of barefaced statement before us, contrary to all the settled law governing conscientious objection. Throughout this entire suit there has been nothing by Jones that could possibly have brought him under the conscientious objector umbrella. After the judgment against him in this court, he did not as suggested, promptly go to the Supreme Court. It was some appreciable time before he made up his mind to have application filed for certiorari.

Before the Supreme Court the attorney for the plaintiff sincerely said that Jones had made a prima facie showing as a conscientious objector; therefore that the suit should be returned to the circuit for further proceedings. The fact is that Jones never even pretended that he had complied with the Selective Service qualifications. The further fact is that no one advised the Supreme Court that the testimony of Jones had affirmatively disqualified him from being allowed a conscientious objector status.

As must be seen the assumption that Jones had a prima facie position as a bona fide conscientious objector was totally unwarranted. Because of the error submission, the Supreme Court was entitled to remand the appeal for reprocessing. It is regrettable that the extremely busy Supreme Court must be asked to rehear this appeal which representative of appellee had suggested remanding. However, under the circumstances it is not too much to request that this palpable and serious wrong to the Selective Service of these United States be remedied by a full rehearing by the United States Supreme Court.